Beth Ann HINNEBERG, Appellant,

v.

BIG STONE COUNTY HOUSING AND
REDEVELOPMENT AUTHORITY,
Respondent.

No. A04–435.

Supreme Court of Minnesota.

Nov. 23, 2005.

James A. Lee, Jr., Legal Aid Society of Minneapolis, Minneapolis, MN, for Appellant.

William J. Watson, Big Stone County Attorney, Ortonville, MN, for Respondent.

Keith S. Moheban, Alison C. Archer, Leonard, Street and Deinard Professional Association, Minneapolis, MN, for Amici National Association of Protection and Advocacy Systems, Inc., and Home Line.

Lisa Walker Scott, Housing and Development Law Institute, Washington, D.C., for Amici Housing and Development Law Institute.

William F. Maher, Washington, D.C., for Amici National Association of Housing and Redevelopment Officials; Minnesota Chapter, National Association of Housing and Redevelopment Officials; and North Central Regional Council, National Association of Housing and Redevelopment Officials.

## OPINION

HANSON, Justice.

Appellant Beth Hinneberg challenges the denial of her request for an accommodation to the residency policy of Respondent Big Stone County Housing and Redevelopment Authority (Big Stone County HRA) to enable Hinneberg to use Big Stone County HRA's Section 8 housing voucher outside of its housing jurisdiction. Hinneberg claims that her medical conditions require this accommodation and argues that the denial amounts to disability discrimination in violation of the reasonable accommodations provisions of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (2000), the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3604(f)(1), (3) (2000), and the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363A.10 (2004). The court of appeals held that FHAA does not apply to public housing authorities and that, in any event, reasonable accommodation does not require Big Stone County HRA to make an exception to its residency policy for Hinneberg because the residency policy applies equally to disabled and nondisabled applicants and thus it does not deny equal opportunity to Hinneberg. *Hinneberg v. Big Stone County Hous. and Redevelopment Auth.*, No. A04–435, 2004 WL

2986536, at \*3 (Minn.App. Dec. 28, 2004). We affirm, though on different grounds.

Big Stone County HRA operates a Section 8 housing program funded by the United States Department of Housing and Urban Development (HUD). The Section 8 program offers housing vouchers to qualified applicants to offset monthly rental payments. 42 U.S.C. § 1437f (*o*) (2000). The goal of the program is to promote economically mixed housing and make affordable housing available to low-income households. 42 U.S.C. § 1437f(a) (2000).

Appellant Beth Hinneberg lived in Hopkins, Minnesota, but planned on moving to Big Stone County, where she grew up and has family. She applied for and received a voucher for Section 8 housing from Big Stone County HRA. Hinneberg looked for housing in Big Stone County for a short period of time, but then reconsidered because of the close proximity she had in Hopkins to an established network of health care providers that treated her disabilities.

A general feature of Section 8 vouchers is that they can be transferred, or "ported," anywhere within the United States so long as the area has a Section 8 program. 42 U.S.C. § 1437f(r)(1)(A) (2000); 24 C.F.R. § 982.353(b) (2005). But both the federal act creating the program and the regulations adopted by HUD to implement the act authorize individual public housing authorities to restrict portability for a person who, like Hinneberg, was not residing in its jurisdiction at the time the applicant first applied for assistance. 42 U.S.C. § 1437f(r)(1)(B)(i); 24 C.F.R. § 982.353(c)(2)(ii). A public housing authority can require the person to first live within its jurisdiction for 12 months before porting its voucher. *Id.* Consistent with this authorization, Big Stone County HRA adopted the following residency policy regarding portability:

If the head or spouse of the assisted family does not have a legal residence or work in the jurisdiction of the Big Stone County Housing Authority at the time of its application, the family will not have any right to lease a unit outside of the Big Stone County Housing Authority jurisdiction for a 12 month period beginning when the family is first admitted to the program. During this period, the family may only lease a unit located in the jurisdiction of the Big Stone County Authority.

Because Hinneberg lived outside of Big Stone County when she applied for the program, this policy disqualified her from porting her voucher unless she first leased a unit in Big Stone County for 12 months. Hinneberg requested an exception to Big Stone County HRA's residency policy as a "reasonable accommodation" of her disabilities. Specifically, she argued that "the housing available in the Big Stone County area presents challenges related to accessibility and livability related to [her] health issues and symptoms." Hinneberg supplied letters from her doctors that documented her disabilities and gave opinions that it was medically necessary for Hinneberg to continue to live in Hopkins.

Big Stone County HRA denied her request. Hinneberg requested an informal hearing on the matter and, pursuant to HUD regulations, Big Stone County HRA designated a hearing officer from a neighboring county's HRA to preside. *See* 24 CFR § 982.555(e)(4)(i) (2005). The hearing officer's decision noted the above undisputed facts and concluded that the Big Stone County HRA "acted responsibly and in accordance with the administrative policy of the Big Stone County HRA, as well as the regulations governing the federally funded Housing Choice Voucher program."

Hinneberg petitioned for a writ of certiorari to the court of appeals, challenging

Big Stone County HRA's decision under the ADA, the FHAA, and the MHRA.[1] *Hinneberg,* 2004 WL 2986536, at *2. In an unpublished opinion, the court of appeals held (1) that the FHAA does not apply to public housing authorities administering Section 8 housing programs, and (2) even if it did, Big Stone County HRA did not discriminate within the meaning of the ADA, FHAA, or MHRA. *Id.* at *3, *4–5. We granted Hinneberg's petition for further review.

Hinneberg also moves to strike portions of the appellate briefs of Big Stone County HRA and amici curiae the National Association of Housing and Redevelopment Officials, et al. ("NAHRO"). Hinneberg essentially objects to statistical information specific to Big Stone County and Hennepin County as being in the nature of evidentiary facts that are not in the administrative record and are not so public as to be facts that the court could judicially notice.[2] We grant the motion to strike because the information is evidentiary in nature and was not presented to the hearing officer or made a part of the administrative record. Accordingly, we have not considered the stricken information in reviewing this case.

## I.

The first question is whether the FHAA applies to public housing authorities, such as Big Stone County HRA, administering Section 8 housing programs. The FHAA makes it illegal "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of [that buyer or renter's] handicap." 42 U.S.C. § 3604(f)(1). The court of appeals interpreted this language to only apply to entities that sell or rent houses, directly provide housing, or "affect the availability of housing generally." *Hinneberg,* 2004 WL 2986536, at *5. The court concluded that "an entity administering rental subsidy vouchers" does not fall under any of these categories and is therefore outside the scope of the FHAA. *Id.*

But federal rules regulating the administration of Section 8 programs provide to the contrary, stating: "The tenant-based program requires compliance with all equal opportunity requirements imposed by contract or federal law, including the

1. If the public housing authority does not give prompt notice that it is not bound by the order of the hearing officer, that order becomes the order of the public housing authority. 24 C.F.R. § 982.555(f)(3). An aggrieved applicant may then seek judicial review in one of two ways: (1) obtaining state appellate court review by petitioning for a writ of certiorari in state court under Minn.Stat. § 606.01 (2004) to review a decision of the public housing authority as a quasi-judicial agency decision not subject to the Administrative Procedure Act, Minn.Stat. ch. 14 (2004), *see, e.g., Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992), or (2) commencing a discrimination action against the public housing authority in federal court under 42 U.S.C. § 3613(a)(1)(A) (2000) or 42 U.S.C. § 12133 (2000), *see, e.g., Huberty v. Washington County Hous. & Redevelopment Auth.,* 374 F.Supp.2d

768, 772 (D.Minn.2005). Hinneberg chose the former process.

2. Specifically, Hinneberg objects to appendices 1 and 2 of Big Stone County HRA's brief and footnote 9 of NAHRO's brief, and to the related discussion of the information at pages 7 and 14 of Big Stone County HRA's brief and 4, 14–15, and 18–19 of NAHRO's brief. Appendix 1 appears to be an e-mail from the director of legal services of the Minneapolis Public Housing Authority describing the Section 8 housing voucher waiting list of the Metropolitan Council HRA, the housing authority that it says serves the area where Hinneberg lives. Appendix 2 is a letter from Big Stone County HRA to its counsel describing its Section 8 waiting list and listing nonresident applicants on the list. NAHRO's footnote 9 lists statistics related to the Minneapolis Public Housing Authority.

authorities cited at 24 C.F.R. § 5.105(a)." 24 C.F.R. § 982.53(a) (2005). One of the authorities listed is "The Fair Housing Act (42 U.S.C. 3601–19) and implementing regulations at 24 C.F.R. part 100 *et seq.*" 24 C.F.R. § 5.105(a) (2005); *see also* 24 C.F.R. § 8.4(a) (2005) (prohibiting disability discrimination in "any program or activity that receives Federal financial assistance from" HUD); 24 C.F.R. § 100.204(a) (2005) (same, but specific to public housing authorities administering Section 8 housing voucher programs); 24 C.F.R. § 982.53(b)(1) (requiring that public housing authorities certify to HUD that they will "administer the [Section 8] program in conformity with the Fair Housing Act"). In light of these requirements, we conclude that the broad phrase in the FHAA—"to otherwise make unavailable or deny" a dwelling—makes the FHAA applicable to public housing authorities administering Section 8 housing voucher programs.

## II.

■ The next question is whether Big Stone County HRA violated the ADA and FHAA by refusing to make an exception to its residency policy. A quasi-judicial decision not subject to the Administrative Procedure Act is reviewed on writ of certiorari by reviewing the record to determine "whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992). We review an administrative agency's interpretation of federal statutes, such as the ADA and FHAA, de novo, as questions of law. *St.*

*Otto's Home v. Minn. Dep't of Human Servs.,* 437 N.W.2d 35, 39–40 (Minn.1989).

### A. Statutory framework

■ There are three ways to prove discrimination under the ADA and FHAA: disparate treatment, disparate impact, and refusal to reasonably accommodate. *Lapid–Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains,* 284 F.3d 442, 448 n. 3 (3d Cir.2002). Hinneberg does not argue that Big Stone County HRA's residency policy discriminates against the disabled either in intent or effect (i.e., disparate treatment or disparate impact). The only issue is whether Big Stone County HRA violated the ADA and FHAA under the reasonable accommodation provisions by refusing to modify its residency policy.

Both parties and the court of appeals analyzed Hinneberg's reasonable accommodations arguments under the ADA and FHAA separately.[3] But the substantive similarities in the relevant language of the acts and the federal precedent interpreting them persuade us that the provisions can be treated as identical for the purpose of this appeal.

The FHAA prohibits discrimination on the basis of disability in the sale or rental of housing. 42 U.S.C. § 3604(f)(1). The antidiscrimination provision was enacted "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601 (2000). One form of discrimination under the FHAA is "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be

---

3. The court of appeals did not separately discuss Hinneberg's claims under the MHRA, noting that it involves the same analysis as under the FHAA. *Hinneberg,* 2004 WL 2986536 at *4 n. 2. Neither of the parties takes issue with this conclusion or makes separate arguments under the MHRA. Thus we find it unnecessary to decide whether discrimination under the MHRA is the same as discrimination under the ADA or FHAA.

necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The scope of title II of the ADA is broader in that it prohibits public entities from discriminating in the provision of services, programs, or activities on the basis of a person's disability.[4] 42 U.S.C. § 12132. Like the FHAA, the ADA has a goal of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (2000). And although title II does not define discrimination, a regulation promulgated pursuant to the act defines one form of discrimination with language that is substantially similar to the reasonable accommodation language in the FHAA: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7) (2005).

The United States courts of appeals that have addressed the issue have concluded that the reasonable accommodations requirements under each act are identical and involve the same analysis. *Tsombanidis v. W. Haven Fire Dept.*, 352 F.3d 565, 573 n. 4 (2d Cir.2003); *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 782–83 (7th Cir.2002);

*Dadian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir.2001); *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 816 n. 26 (9th Cir.1999). We agree and therefore we will conduct a unitary analysis of Hinneberg's reasonable accommodations claim under the ADA and FHAA.[5]

## B. Hinneberg's Burden of Proof

■■ In order to prevail on a reasonable accommodations claim, the plaintiff must make a prima facie showing that the accommodation she seeks is reasonable on its face. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) (applying ADA). The burden is on the plaintiff to show "that her requested accommodation is (1) linked to her disability-related needs, (2) necessary to afford her an equal opportunity to enjoy Section 8 benefits and (3) possible to implement." *Huberty v. Washington County Hous. & Redevelopment Auth.*, 374 F.Supp.2d 768, 773 (D.Minn.2005). Another way to formulate this test is by focusing on three key elements: necessity, equal opportunity, and reasonableness. *Oconomowoc Residential Programs, Inc.*, 300 F.3d at 784. If the plaintiff satisfies these requirements, the burden shifts to the defendant to demonstrate undue hardship in the particular circumstances. *US Airways*, 535 U.S. at 402, 122 S.Ct. 1516.

### 1. Necessity

Hinneberg submitted as evidence notes from her doctors giving their opinions that

---

**4.** While the act does not further define "services, programs, or activities," its implementing regulations state that "title II applies to anything a public entity does." 28 C.F.R. § 35, app. A (2005). The parties agree that the ADA applies to public housing authorities administering Section 8 programs.

**5.** Also, section 504 of the Rehabilitation Act of 1973, now codified at 29 U.S.C. § 794 (2000), and its implementing regulations have been interpreted to encompass reasonable accom-

modations provisions that are substantively identical to those in the ADA and FHAA. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n. 11 (9th Cir.1999); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 497 (7th Cir. 1996); *Erdman v. City of Fort Atkinson*, 84 F.3d 960, 962 (7th Cir.1996). Therefore case law interpreting reasonable accommodations requirements under any of these acts is instructive for the purposes of this appeal.

it would be medically advantageous—i.e., necessary—for her to remain in Hopkins because of its proximity to her team of specialists and support groups that have worked with her for years to treat her complex mix of disabilities. At the administrative hearing, Big Stone County HRA briefly argued that there are sufficient medical facilities in Big Stone County to support Hinneberg's medical needs. But on appeal before this court, Big Stone County HRA does not dispute Hinneberg's claimed necessity. Therefore, we hold that Hinneberg satisfied her burden of showing that her disability renders it necessary for her to live in Hopkins near her health care providers.

### 2. Equal Opportunity

■ The court of appeals focused primarily on the equal opportunity element, holding that Big Stone County HRA's residency policy did not disadvantage Hinneberg in comparison to a non-resident, non-disabled applicant. *Hinneberg,* 2004 WL 2986536, at *3–4. In this context, Hinneberg takes issue with the court of appeals' reliance on *Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), because, she argues, *Alexander* was only a disparate impact case, and thus inapposite. We agree with the court of appeals that *Alexander* is controlling, but disagree with the court of appeals' conclusion that Big Stone County HRA's residency policy treats disabled nonresidents the same as nondisabled nonresidents.

In *Alexander,* Tennessee Medicaid recipients challenged a policy by state Medicaid directors that reduced from 20 to 14 the number of inpatient hospital days that would be covered under the plan. 469 U.S. at 290, 105 S.Ct. 712. The plaintiffs argued that this policy constituted unlawful discrimination in violation of Section 504 of the federal Rehabilitation Act of 1973 which prohibits disability discrimination in programs or activities receiving federal financial assistance. 469 U.S. at 290, 105 S.Ct. 712. The Supreme Court rejected this argument because the same benefit of 14 days of health coverage was "equally accessible to both handicapped and nonhandicapped persons." *Id.* at 309, 105 S.Ct. 712.

Although Hinneberg is correct that *Alexander* was primarily a disparate impact case, the Supreme Court did discuss whether "meaningful access" under the Rehabilitation Act required Tennessee to modify its policy and "single out the handicapped for *more* than 14 days of coverage." *Id.* at 302–03, 105 S.Ct. 712. The Court also treated "meaningful access" and "reasonable accommodations" as being equivalent as applied. *Id.* at 301, 105 S.Ct. 712. Thus, the holding in *Alexander* on meaningful access is fully applicable to reasonable accommodations claims made under the ADA and FHAA.

Under *Alexander,* the first step in an equal opportunity analysis is to determine the relevant benefit. The Supreme Court in *Alexander* rejected the plaintiffs' reasonable accommodations argument as "simply unsound" because their argument presumed that the relevant benefit "is the amorphous objective of 'adequate health care.'" *Id.* at 303, 105 S.Ct. 712. Instead the Court characterized the relevant benefit as being more specific: "14 days of inpatient coverage." *Id.* The Court then applied the equal opportunity element to this relevant benefit holding that because "[t]he State has made the same benefit * * * equally accessible to both handicapped and nonhandicapped persons, the State is not required to assure the handicapped 'adequate health care' by providing them with more coverage than the nonhandicapped." *Id.* at 309, 105 S.Ct. 712. The relevant benefit that Hinneberg seeks is

portability of her housing voucher. The issue thus is whether Big Stone County HRA's residency policy affords equal access to such portability.

Both parties confirmed at oral argument that the residency policy requires physical residency within Big Stone County before an applicant can be admitted to the program and continued residency in the county for 12 months before vouchers become portable. If a nonresident applicant does not establish residency in Big Stone County, she will not be admitted to the program and cannot ever use the Big Stone County HRA voucher elsewhere. As thus interpreted, Hinneberg does not have equal opportunity to enjoy the portability of her voucher because her disability prevents her from moving to Big Stone County to establish residency. A nondisabled, nonresident applicant would theoretically have the ability to move to Big Stone County to establish residency and could thereby obtain both the immediate benefit of the use of the voucher and the ultimate benefit of the portability of the voucher. Thus, Hinneberg's proposed accommodation is "necessary to afford [her] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

### 3. Reasonableness

■ The final element that Hinneberg must establish is reasonableness. The Supreme Court has endorsed the relatively undemanding standard that a plaintiff need only "show that an 'accommodation' seems reasonable on its face, i.e. ordinarily or in the run of cases." *US Airways*, 535 U.S. at 401–02, 122 S.Ct. 1516. This is akin to merely showing that the accommodation is feasible or plausible for the defendant to implement. *Id.* The accommodation that the plaintiff in *US Airways* proposed was reassignment to a less physically demanding mailroom duty after he

suffered a back injury at work. *Id.* at 394, 122 S.Ct. 1516. The Court noted that "normally such a request would be reasonable" because the relevant statute specifically stated that " 'reasonable accommodation' may include 'reassignment to a vacant position.' " *Id.* at 403, 122 S.Ct. 1516 (citing 42 U.S.C § 12111(9) (2000)).

Similarly, Hinneberg's request for a policy modification is a type of accommodation that the FHAA and ADA specifically mention. 42 U.S.C. § 3604(f)(3)(B) ("[D]iscrimination includes * * * a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."); 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability * * *."). And it is theoretically possible for Big Stone County HRA to make this exception to its residency policy for Hinneberg. Therefore it could be argued that the reasonableness element of Hinneberg's burden has been satisfied.

*US Airways* went on to explain that some circumstances warrant a more demanding showing of reasonableness by the plaintiff. The Supreme Court held that although the plaintiff's proposed accommodation of reassignment to a vacant position would normally be reasonable, the specific facts of the case warranted a higher burden because the accommodation would violate the defendant's seniority system. *Id.* at 405–06, 122 S.Ct. 1516. Although the Court explained the special significance of seniority policies—"providing important employee benefits by creating, and fulfilling, employee expectations of fair, uniform treatment"—it did not provide guidance for future determinations of what other

policies might constitute a special circumstance that imposes an increased burden on the plaintiff. *Id.* at 404, 122 S.Ct. 1516.

If Big Stone County HRA's residency policy is a circumstance that imposes the increased burden on Hinneberg, we would conclude that she did not meet that burden. The Supreme Court gave two examples of how a plaintiff could meet this higher burden. Both examples involve the plaintiff showing that the policy was insignificant under the particular facts of the case, such as where the employer commonly made exceptions to it, or the policy was already so riddled with exceptions that one more would not make a difference. *US Airways,* 535 U.S. at 405, 122 S.Ct. 1516. Hinneberg has made no such showing here.

### 4. Shift of Burden

We note that the line between the plaintiff's burden to prove reasonableness and the shifting of the burden to the housing authority to prove undue hardship is a fine one that the Court does not clearly delineate. As Justice O'Connor commented in her concurring opinion:

> In Part II of its opinion, the Court correctly explains that "a plaintiff/employee (to defeat a defendant/employer's motion for summary judgment) need only show that an 'accommodation' seems reasonable on its face, *i.e.,* ordinarily or in the run of cases." *Ante,* at 401, 122 S.Ct. 1516. In other words, the plaintiff must show that the method of accommodation the employee seeks is reasonable in the run of cases. See *ante,* at 402, 122 S.Ct. 1516 (quoting *Barth v. Gelb,* 2 F.3d 1180, 1187 (CADC 1993)). As the Court also correctly explains, "[o]nce the plaintiff has made this showing, the defendant/employer then must show special . . . circumstances that demonstrate un-

due hardship" in the context of the particular employer's operations. *Ante,* at 402, 122 S.Ct. 1516. These interpretations give appropriate meaning to both the term "reasonable," 42 U.S.C. § 12112(b)(5)(A), and the term "undue hardship," *ibid.,* preventing the concepts from overlapping by making reasonableness a general inquiry and undue hardship a specific inquiry. When the Court turns to applying its interpretation of the Act to seniority systems, however, it seems to blend the two inquiries by suggesting that the plaintiff should have the opportunity to prove that there are special circumstances in the context of that particular seniority system that would cause an exception to the system to be reasonable despite the fact that such exceptions are unreasonable in the run of cases.

*Id.* at 410–11, 122 S.Ct. 1516.

For purposes of this appeal, we will assume without deciding that Hinneberg has satisfied her burden of proving that her requested accommodation was reasonable because we ultimately conclude that Big Stone County HRA satisfied its burden of proving that the requested accommodation would result in undue hardship.

### C. Big Stone County HRA's Burden of Proof

 There are two ways a defendant can satisfy its burden of proving that the requested accommodation would result in undue hardship. The defendant can either show that the proposed accommodation would impose undue financial or administrative burdens or that the accommodation would require "fundamental" or "substantial" modifications to its program. *Se. Cmty. Coll. v. Davis,* 442 U.S. 397, 410, 412–13, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *see also DeBord v. Bd. of Educ.,* 126 F.3d 1102, 1106 (8th Cir.1997); 28

C.F.R. § 35.130(b)(7); 24 C.F.R. § 8.33 (2005).

Big Stone County HRA first argues that the proposed accommodation would result in undue hardship because the cost of evaluating the adequacy of currently available programs in Big Stone County to address the specific needs of a disabled applicant would result in a substantial administrative burden and cost. But we conclude that this argument was not sufficiently developed in the record to satisfy Big Stone County HRA's burden of proof. The record does not disclose the cost of evaluating Hinneberg's request.

■ Big Stone County HRA also argues that the proposed accommodation would result in undue hardship because it would fundamentally alter the nature of its Section 8 housing program. Because the exception to the residency policy requested by Hinneberg has the potential of swallowing the policy, and the policy is important to the ability of Big Stone County HRA to administer its program, we agree that Big Stone County HRA has shown that the requested accommodation would result in undue hardship.

First, we observe that although portability is an important feature of Section 8 vouchers, another important feature of the program is its focus on meeting the needs of residents in each housing authority's jurisdiction. Congress directed that funding for individual housing agencies be initially distributed "based on the relative needs of different states, areas, and communities, as reflected in data as to population, poverty, housing overcrowding, housing vacancies, amount of substandard housing, and other objectively measurable conditions." 42 U.S.C. § 1439(d)(1)(A)(i) (2000). Consistent with the objective that the budgets of local public housing authorities be used to serve local populations, HUD implemented a complex scheme for allocating funds. *See* 24 C.F.R. §§ 791.401–.407 (2005). Housing authorities "compete" with other authorities in their "allocation area" for funds from a HUD field office with a fixed budget. 24 C.F.R. § 791.404. Although the exact criteria for awarding funding can vary, 24 C.F.R. § 791.406(a), the objective is always to "provide for the equitable distribution of available budget authority, consistent with the relative housing needs of each allocation area." 24 C.F.R. § 791.404(a).

Thus it is clear that Congress and HUD established a nexus between the budget for a given public housing authority and the demographic characteristics of the population within its jurisdiction. This suggests that a housing authority may legitimately be concerned with its ability to meet the needs of the residents within its jurisdiction. If Hinneberg were able to use a Big Stone County housing voucher in another jurisdiction, the funding available to Big Stone County HRA to provide for resident-eligible applicants would be reduced. Although the portability feature modifies a housing authority's local preference to a degree, Congress mitigated the effect of portability by specifically allowing housing authorities to impose durational residency requirements like the one at issue here. 42 U.S.C. § 1437f(r)(1)(B)(i); *see also* 24 C.F.R. § 982.353(c)(2)(ii).

In fact, the legislative history of § 1437f(r)(1)(B) shows that Congress intended to authorize housing authorities to restrict access to its funds by nonresidents:

This [portability] system has also led to instances of waiting list shopping where families that reside in areas with long waiting lists, shop the waiting lists in surrounding areas. When they find a shorter list, the family will place their name on the shorter list and upon receiving assistance in this new area will

use such assistance in the jurisdiction where the family resides, without ever living in the new area that supplies the assistance. This waiting list shopping has resulted in some small agencies being unable to assist local residents.

Another problem * * * is the effect of the difference in fair market rents between the originating area and the receiving area * * * further undercutting the number of local families the originating agency can serve.

H.R.Rep. No. 102–760, at 90–91 (1992).

Hinneberg counters that the proposed accommodation would create a very limited rule that only requires the proposed accommodation in individual cases where an applicant establishes that her disability prevents her from meeting the residency requirements. But Big Stone County HRA must face the likelihood that the grant of this accommodation to Hinneberg would encourage other similarly situated disabled nonresident applicants to request the same accommodation from the Big Stone County HRA. *See DeBord,* 126 F.3d at 1106 (recognizing that the cumulative effect that the proposed accommodation would have on the defendant made it unreasonable); *Smith & Lee Assocs., Inc. v. City of Taylor,* 13 F.3d 920, 931–32 (6th Cir.1993) (noting unreasonableness is determined by the cumulative effect that all similar accommodations would have on the defendant, not just by the effect that the one individual case before the court would have). If granted, such requests could impair Big Stone County HRA's ability to restrict the portability of its vouchers and, ultimately, could reduce Big Stone County's ability to serve the needs of its own residents, including those with disabilities.

Hinneberg also argues that portability is "fundamental" to the structure of the program. But the Section 8 funding structure and the legislative history of section 1437f(r)(1)(B) persuade us that Big Stone County HRA's residency policy is also fundamental to the Section 8 program. In fact, by authorizing housing authorities to condition portability on satisfaction of a residency requirement, it appears that Congress views residency as a more fundamental element of the program. Therefore we conclude that Big Stone County has satisfied its burden of showing the proposed accommodation would result in undue hardship.

Affirmed; motion to strike granted.