Jimmie **EDWARDS**, Appellant,

v.

**HOPKINS PLAZA LIMITED PARTNERSHIP, et al.,** Respondents.

No. A09–1616.

Court of Appeals of Minnesota.

June 1, 2010.

Lael Robertson, Legal Aid Society of Minneapolis, Minneapolis, MN, for appellant.

James R. Behrenbrinker, Benjamin R. Elwood, Minneapolis, MN, for respondents.

Aaron D. Van Oort, Alissa M. Raddatz, Faegre & Benson, LLP, Minneapolis, MN; and Todd B. Liljenquist, Minnesota Multi Housing Association, Bloomington, MN, for amicus curiae Minnesota Multi Housing Association.

Joseph D. Rich (pro hac vice), Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for amici curiae National Fair Housing Alliance, Lawyers' Committee for Civil Rights Under Law, and Washington Lawyers' Committee for Civil Rights and Urban Affairs.

Edward G. Kramer (pro hac vice), The Fair Housing Law Clinic, Cleveland, OH, for amicus curiae The Housing Advocates, Inc.

Considered and decided by BJORKMAN, Presiding Judge; KALITOWSKI, Judge; and MINGE, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Jimmie Edwards challenges the district court's grant of summary judgment to respondents Hopkins Plaza Limited Partnership and Stuart Management Corporation on his claims of discrimination relating to real property under the Minnesota Human Rights Act (MHRA). Appellant argues that respondents discriminated against him by (1) refusing to rent to him based on his status with regard to public

assistance; (2) quoting a higher rent price to him based on his status with regard to public assistance; and (3) failing to reasonably accommodate his disability.

## FACTS

Respondent Hopkins Plaza Limited Partnership owns Hopkins Plaza, a housing complex comprised of 51 one-bedroom apartments, 51 two-bedroom apartments, and 42 three-bedroom townhouses. Respondent Stuart Management Corporation manages the complex. Appellant Jimmie Edwards was a tenant at Hopkins Plaza beginning in July 2001 pursuant to a series of one-year written leases. From September 1, 2005, to August 31, 2006, appellant resided in a two-bedroom apartment and paid $870 per month rent, about $361 of which was paid by Section 8 rental assistance through the housing choice voucher (HCV) program.

Respondents qualified for a lower property tax assessment for taxes payable between 1999 and 2004 as a result of their participation in the HCV program. *See* Minn.Stat. §§ 273.13, subd. 1 (1998) (providing that real property is subject to classification for purposes of a general property tax); subd. 25(e) (Supp.1999) (providing a "4d" property tax classification for qualifying low-income rental housing); .126, subd. 1 (Supp.1999) (setting forth qualifying rules for assessment under class 4d); *see also* 1997 Minn. Laws ch. 231, art. 1, § 22, at 2416–17 (providing effective date for section 273.126); Minn. Laws 1st Spec. Sess. ch. 5, art. 3, § 96(d), at 1529 (repealing section 273.126 effective for property taxes payable in 2004). The record indicates that after section 273.126 was repealed, respondents decided to stop participating in the HCV program because they no longer received a tax benefit to offset the administrative burdens of participating in the program.

In implementing this decision, respondents first stopped accepting new Section 8 tenants for the complex, and then employed a two-phase plan to not renew the leases of existing Section 8 tenants. In 2005 and 2006, they did not renew Section 8 leases for one- and two-bedroom apartments; in 2006 and 2007, they did not renew Section 8 leases for three-bedroom townhouses. The record indicates that respondents used this phase-out plan to ease the impact on the greater number of families that lived in the townhouses, and to reduce the financial impact on their business. On April 3, 2006, respondents sent appellant a letter, stating: "Due to changes in the Section 8 program we are unable to renew your lease when it expires August 31, 2006. This is your official two-month written notice to vacate."

In an attempt to remain in his apartment, appellant requested that respondents reasonably accommodate his disability by renewing his Section 8 lease. They declined to do so. Appellant also asked respondents to negotiate a new lease for a two-bedroom apartment. Respondents told appellant that the apartment rents for $895 per month, then subsequently advertised it for $870 per month.

Appellant moved out of his apartment at the end of the lease period. He subsequently sued respondents, alleging violations of the MHRA for discrimination based on his status with regard to public assistance, and for failure to reasonably accommodate his disability. Appellant moved for partial summary judgment and respondents moved for full summary judgment. The district court granted summary judgment in favor of respondents.

## ISSUES

1. Does a property owner's business decision to end participation in a Section 8 housing choice voucher program and, con-

sequently, to stop leasing to a Section 8 tenant, constitute discrimination relating to real property based on the tenant's status with regard to public assistance under the Minnesota Human Rights Act, Minn.Stat. § 363A.09, subd. 1(1) (2008)?

2. Is a tenant who cannot afford to pay rent without Section 8 rental assistance qualified to challenge as discriminatory the amount of rent he would be charged without the rental assistance by a property owner who has ended its participation in Section 8?

3. Is a property owner required to accept the request of a disabled tenant to continue to lease the apartment with Section 8 rental assistance as a reasonable accommodation of a disability under the Minnesota Human Rights Act, Minn.Stat. § 363A.10, subd. 1(2) (2008)?

## ANALYSIS

On appeal from summary judgment we examine whether genuine issues of material fact exist, and whether the district court erred as a matter of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). "We consider the evidence in the light most favorable to the nonmoving party." *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 542 (Minn. 2001). "We will affirm the judgment if it can be sustained on any grounds." *Myers Through Myers v. Price*, 463 N.W.2d 773, 775 (Minn.App.1990), *review denied* (Minn. Feb. 4, 1991).

In interpreting a statute, the appellate court must give effect to the legislature's intent. *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 445 (Minn. 2000); Minn.Stat. § 645.16 (2008). If statutory language is clear, we rely on its plain meaning. *Correll*, 607 N.W.2d at 445. "[T]he letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16.

The MHRA reflects a "strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services." *Wayne v. MasterShield, Inc.*, 597 N.W.2d 917, 920 (Minn.App.1999) (quotation omitted), *review denied* (Minn. Oct. 21, 1999). Provisions of the MHRA shall be liberally construed for the accomplishment of its purposes. Minn.Stat. § 363A.04 (2008).

## I.

■■■ Owners and managing agents who "refuse to sell, rent, or lease or otherwise deny to or withhold from any person . . . any real property because of . . . status with regard to public assistance" commit an unlawful discriminatory act under the MHRA. Minn.Stat. § 363A.09, subd. 1(1). " 'Status with regard to public assistance' means the condition of being a . . . tenant receiving federal, state, or local subsidies, including rental assistance or rent supplements." Minn.Stat. § 363A.03, subd. 47 (2008). A plaintiff may show discrimination under the MHRA by using the *McDonnell Douglas* burden-shifting framework. *Goins v. West Group*, 635 N.W.2d 717, 722–23, 724 n. 3 (Minn.2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) (setting out framework). A plaintiff may also establish discrimination through direct evidence. *Goins*, 635 N.W.2d at 722–23. Here, appellant relies on direct evidence to show that respondents refused to rent to him "because of" his "status with regard to public assistance." *See* Minn.Stat. § 363A.09, subd. 1(1).

Appellant argues that respondents engaged in discrimination relating to real property under Minn.Stat. § 363A.09, subd. 1(1), when they refused to renew his

lease "because of" his "status with regard to public assistance." We disagree.

## Section 8 Housing Programs

The federal Section 8 program subsidizes housing for low-income tenants, and is administered by local public housing authorities. 42 U.S.C. § 1437f (2006); 24 C.F.R. § 982.1(a)(1) (2009). The Section 8 program provides two types of assistance, project-based and tenant-based. *See* 42 U.S.C. § 1437f(d); 24 C.F.R. § 982.1(b) (2009); *Occhino v. Grover,* 640 N.W.2d 357, 359 (Minn.App.2002), *review denied* (Minn. May 28, 2002). The program at issue here is the tenant-based, or HCV program, where "the family selects a suitable unit. After approving the tenancy, the [public housing authority] enters into a contract to make rental subsidy payments to the owner to subsidize occupancy by the family." 24 C.F.R. § 982.1(b)(2); *see Occhino,* 640 N.W.2d at 359 (describing program).

■ Under federal law, this is a voluntary program and property owners will be bound by a contract only if "the owner is willing to lease the unit under the program." 24 C.F.R. § 982.302(b) (2009). But "[n]othing in part 982 is intended to pre-empt operation of [s]tate and local laws that prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8 voucher-holder." 24 C.F.R. § 982.53(d) (2009). Thus, "[t]he Federal statute merely creates the scheme and sets out the guidelines for the funding and implementation of the program . . . through local housing authorities. It does not preclude [s]tate regulation." *Attorney Gen. v. Brown,* 400 Mass. 826, 511 N.E.2d 1103, 1105 (1987).

## Minnesota Precedent

Minnesota law does not require property owners to participate in the Section 8 program. *See, e.g.,* Minn.Stat. § 504B.255

(2008) (providing that property owners of project-based rental housing must give one-year notice of their intent to exercise their "option to terminate or not renew a federal Section 8 contract and mortgage" or to "terminate a housing subsidy program"). Although section 504B.255 relates to project-based housing subsidies, as addressed in *Occhino,* 640 N.W.2d at 361, it nonetheless provides that property owners may exercise the option to terminate a federal Section 8 contract. And there is nothing in the statute to lead us to conclude that the legislature intended that property owner participation in project-based Section 8 programs is voluntary, but participation in tenant-based programs is mandatory.

Moreover, further evidence of the voluntary nature of participation in Section 8 programs in Minnesota is the legislature's enactment of a statute, now repealed, to provide tax incentives to property owners who make a minimum percentage of units in a building available to Section 8 voucher holders. *See* Minn.Stat. § 273.126 (Supp. 1999); Minn. Laws 1st Spec. Sess. ch. 5, art. 3, § 96(d), at 1529 (repealing section 273.126 effective for property taxes payable in 2004). If participation in Section 8 programs were not voluntary, there would have been no reason for the state to provide incentives for property owner participation.

■ Furthermore, the authority charged with enforcing the MHRA, the Minnesota Department of Human Rights (the Department), has specifically determined that participation in Section 8 programs is voluntary, and refusal to participate in the programs cannot be characterized as discrimination based on status with regard to public assistance. *See State by Wilson v. High View N. Apartments* (Office of Hearing Exam'rs

for Dept. of Human Rights May 2, 1979) (concluding that the MHRA does not mandate participation in Section 8 programs, and that refusal to participate for business reasons is not discrimination). The Department's interpretation of the MHRA, although not controlling, is entitled to great weight. *Cummings v. Koehnen,* 556 N.W.2d 586, 589 (Minn. App.1996), *aff'd,* 568 N.W.2d 418 (Minn. 1997). In addition, the record indicates that at least one of the local authorities charged with administering Section 8 programs, the Metropolitan Council Housing and Redevelopment Authority, has provided information indicating that participation in the programs by a property owner is voluntary. *See, e.g.,* Metro. Council Hous. & Redev. Auth., *HRA Owner/Landlord Information* (2009), http://www.metrocouncil.org/housing/HRA/landlord.htm ("Your decision to join other rental property colleagues in the ... HCV ... Program will make a difference in providing affordable housing in the Twin Cities' region.").

■ We conclude that, consistent with federal regulations, Minnesota law does not require property owners in Minnesota to participate in Section 8 programs. *See* 24 C.F.R. § 982.302(b) (providing that tenants may rent units where "the owner is willing to lease the unit under the program"), and Minn.Stat. § 504B.255 (providing that landlords must give notice of their intent to exercise their "option to terminate or not renew a federal Section 8 contract and mortgage" or to "terminate a housing subsidy program"). And we conclude that refusal to participate in a voluntary program for a legitimate business reason does not constitute discrimination under the MHRA.

**Other States' Precedent**

Appellant cites two cases from other jurisdictions that have found that state anti-discrimination statutes prevent property owners from refusing to rent to Section 8 participants, even if the property owner alleges that the refusal to rent is based on a desire not to participate in Section 8 programs for legitimate business reasons. We conclude that the statutes in those cases have different language than the MHRA, and thus, the cases are not persuasive.

Appellant cites *Franklin Tower One, L.L.C. v. N.M.,* a case where the New Jersey Supreme Court held that a statute that made it unlawful for a property owner to refuse to rent to a person "because of the source of any lawful income ... or the source of any lawful rent payment" prohibited the property owner from refusing a Section 8 voucher from an existing tenant who became Section 8 eligible during her tenancy. 157 N.J. 602, 725 A.2d 1104, 1106, 1112 (1999). *But see Knapp v. Eagle Prop. Mgmt. Corp.,* 54 F.3d 1272, 1282 (7th Cir.1995) (holding that a Wisconsin statute prohibiting housing discrimination based on "lawful source of income" did not include Section 8 vouchers because they were not specifically included in the definition of "lawful source of income" in the Wisconsin code). The *Franklin* court acknowledged the regulatory requirements imposed by the Section 8 program, but noted that property owners in New Jersey are already subject to numerous regulations. 725 A.2d at 1113–14.

The Minnesota statute at issue here does not prohibit refusal to rent based on the tenant's lawful source of income. Rather, the statute protects individuals based on their "status with regard to public assistance." *See* Minn.Stat. § 363A.09, subd. 1(1). Because Minnesota's statute is fundamentally different than the statute at issue in *Franklin,* we conclude that the

reasoning in *Franklin* is not persuasive here.

Appellant also cites a case that analyzes a statute that he asserts is more similar to Minnesota's. In *DiLiddo v. Oxford St. Realty, Inc.*, a property owner refused to rent to an otherwise qualified tenant because the tenant was going to pay rent with a housing voucher issued pursuant to a Massachusetts housing subsidy program, and the property owner found several of the program requirements unreasonable and excessive. 450 Mass. 66, 876 N.E.2d 421, 425 (2007). The prospective tenant sued under a Massachusetts statute that makes it unlawful for a property owner "to discriminate against any individual … who is a tenant receiving federal, state, or local housing subsidies, including rental assistance or rental supplements, because the individual is such a recipient, *or because of any requirement of such public assistance, rental assistance, or housing subsidy program.*" Mass. Gen. Laws Ann. ch. 151B, § 4(10) (West 2006) (emphasis added); *DiLiddo*, 876 N.E.2d at 428. The Massachusetts Supreme Court compared this language to an earlier version of the statute that prohibited discrimination against any recipient of housing subsidies "*solely* because the individual is such a recipient." *DiLiddo*, 876 N.E.2d at 427–28 (discussing Mass. Gen. Laws ch. 151B, § 4(10) (1984)) (emphasis added). Under the earlier version, a property owner could litigate whether there were legitimate, nondiscriminatory business reasons for a refusal to rent to Section 8 tenants. *Brown*, 511 N.E.2d at 1108–09. But in *DiLiddo*, the Massachusetts Supreme Court held that the added statutory language "clarified that both kinds of housing discrimination that this court had parsed so carefully in *Brown* were now unlawful," and rejected the claim that the property owner may refuse to participate in the subsidy program as long as he had a "le-

gitimate business reason." *DiLiddo*, 876 N.E.2d at 428–429.

Appellant asserts that like the Massachusetts statute, the Minnesota statute does not require that the property owner be motivated by discriminatory animus. But unlike the amended statute in Massachusetts, the statutory language here does not contain a provision making it a discriminatory act for a property owner to refuse to rent based on the requirements of the Section 8 program. *See* Minn.Stat. § 363A.09, subd. 1(1) (2008). Moreover, the Minnesota statute is more similar to the prior version of the Massachusetts statute, under which a property owner could refuse to rent to someone based on a legitimate business desire not to participate in a housing subsidy program. *See Brown*, 511 N.E.2d at 1108–09. *Compare* Minn.Stat. § 363A.09, subd. 1(1) (prohibiting discrimination "because of … status with regard to public assistance") with Mass. Gen. Laws ch. 151B, § 4(10) (1984), *cited in Brown*, 511 N.E.2d at 1105 (prohibiting discrimination "solely because the individual is such a recipient").

We are constrained by the language in the Minnesota statute, and we conclude that the plain language of Minn.Stat. § 363A.09, subd. 1(1), does not make it unlawful for a property owner to refuse to rent to Section 8 tenants because the property owners do not want to participate in the program for legitimate business reasons. The Minnesota statute only makes it unlawful to refuse to rent to someone "because of" their status with regard to public assistance. We conclude that the refusal to renew a lease because of a decision to discontinue participation in a voluntary housing program is not a refusal to rent because of status with regard to public assistance.

## Property Owners Can Discontinue Participation in Section 8 Programs

 Because federal law does not require property owners to participate in Section 8 housing programs like HCV and because Minnesota law does not require such participation, we conclude that the district court did not err in determining that continued participation in the program by a property owner is also voluntary. To conclude otherwise would be to force property owners to continue to participate indefinitely in a voluntary program against their will.

Although Minnesota courts have not directly addressed this issue in a published opinion, we have addressed it tangentially. In *Occhino*, a property owner bought a duplex in which a tenant-based Section 8 recipient resided; the new property owner increased the rent to a prohibitive amount for the program and notified the tenant that he must vacate the premises. 640 N.W.2d at 359. The *Occhino* court held that the section 504B.255 notice requirement for terminating the tenancy of Section 8 recipients applied to project-based tenants, but not to a tenant receiving tenant-based Section 8 assistance. *Id.* at 362–63. But the *Occhino* court did not determine that the eviction was improper, and nothing in the reasoning in *Occhino* suggests that the statute would prohibit a property owner from terminating the tenancy of an HCV tenant.

### Policy Considerations

Increasing affordable housing availability is a valid goal that would be advanced if all property owners were willing to participate in Section 8 programs. But we are limited by the language in the statutes that the legislature has enacted. Thus, the issue of ensuring affordable housing availability is an issue for the Minnesota Legislature or the United States Congress, which have the power to establish policy and enact laws in this area. *See Krueger v. Zeman Const. Co.*, 781 N.W.2d 858, 863–64 (Minn.2010) (noting that the MHRA specifically prohibits certain conduct in particular contexts, and declining to read a cause of action for discrimination for a person not a party to a contract, where the MHRA does not specifically provide one); *see also Beardsley v. Garcia*, 753 N.W.2d 735, 740 (Minn.2008) (declining to interpret the statute so as to "effectively rewrite" it because that prerogative belongs to the legislature rather than the court); *Goldman v. Greenwood*, 748 N.W.2d 279, 285 (Minn.2008) ("The policy-based argument ... regarding when to measure the endangerment to the child is not without merit, but such a determination belongs to the legislature, not to this court.").

Finally, because neither Congress nor the Minnesota Legislature has made participation in Section 8 programs mandatory, a conclusion that a property owner who chose to participate in the program could never opt out, would likely discourage property owners from participating in the first place, thus defeating the goal of increasing the availability of affordable housing.

### Conclusion

 Because neither federal nor Minnesota law, including the MHRA, makes it unlawful for property owners to either refuse to rent, or refuse to continue renting, to tenant-based Section 8 recipients based on a legitimate business decision not to participate in Section 8 programs, we conclude that the district court did not err as a matter of law by granting respondents' motion for summary judgment on appellant's claims of discrimination under the MHRA. *See Cooper*, 460 N.W.2d at 4 (providing that appellate courts will affirm summary judgment if no material fact issues exist and the decision is not affected by error of law).

## II.

Appellant argues that the district court erred in granting summary judgment to respondents on his claim that respondents discriminated against him when they knowingly quoted a higher rent to him than they advertised to non-HCV prospective tenants. The MHRA makes it unlawful for a property owner "to discriminate against any person ... because of ... status with regard to public assistance ... in the terms, conditions or privileges of the sale, rental or lease of any real property." Minn.Stat. § 363A.09, subd. 1(2).

■■■ Because this allegation of discrimination is based on indirect evidence, appellant relies on the burden-shifting analysis in *McDonnell Douglas.* *See Goins,* 635 N.W.2d at 723–24. Under this framework, a plaintiff must prove a prima facie case of discrimination; the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for her actions; and the burden then shifts back to the plaintiff to show that the reasons proffered by the defendant were pretextual. *Danz v. Jones,* 263 N.W.2d 395, 399 (Minn.1978). To present a prima facie case, appellant had to show that (1) he was a member of a protected class; (2) he was qualified to rent the apartment; (3) despite qualifications, he was rejected; and (4) after his rejection, the apartment remained open and respondents continued to seek applicants from persons with appellant's qualifications, but who were not members of the protected class. *See id.* (discussing requirements for prima facie case of employment discrimination based on sex).

Appellant asserts that "qualified" in the second prong means that he is "otherwise qualified," but for the protected class status. And he contends that because it is his status that is the alleged basis for the property owner's discrimination, the district court erred in granting respondents' summary judgment motion on this issue. We disagree.

Appellant's argument depends on his claim that respondents discriminated against him when they opted out of the HCV program and refused to rent to him. But we have determined that opting out of the Section 8 program for legitimate business reasons does not constitute discrimination under section 363A.09, subdivision 1. Appellant cannot qualify to rent the apartment because he cannot afford to do so without the HCVs, and respondents have opted out of the HCV program. Thus, the district court properly granted summary judgment to respondents, on the ground that appellant failed to make a prima facie case of discrimination. Because appellant failed to make a prima facie case, we need not reach the issue of whether respondents' actions in quoting a higher rent price to appellant than they subsequently advertised constituted discrimination.

## III.

■■■ Appellant contends the district court erred in granting summary judgment for respondents on appellant's claim of discrimination based on his disability. Appellant claims that he receives HCVs because of his disability, and respondents are required to reasonably accommodate his disability by continuing to accept his HCVs. We disagree.

■■■ Under the MHRA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when accommodations may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling." Minn.Stat. § 363A.10, subd. 1(2). To prevail, a plaintiff must make a prima facie showing that the accommoda-

tion sought is reasonable on its face. *Hinneberg v. Big Stone County Hous. & Redev. Auth.*, 706 N.W.2d 220, 226 (Minn. 2005). The plaintiff has the burden of showing that the requested accommodation is (1) linked to disability-related needs; (2) necessary for an equal opportunity to enjoy Section 8 benefits; and (3) possible to implement. *Id.* "Another way to formulate this test is by focusing on three key elements: necessity, equal opportunity, and reasonableness." *Id.* If the plaintiff can make this showing, the burden shifts to the defendant to show that there would be undue hardship under the circumstances. *Id.*

The district court found that appellant satisfied his burden as to necessity, by "demonstrat[ing] evidence that his disability renders it necessary for him to use his HCV," because health conditions prevent him from earning enough income to rent the apartment without HCVs. The court also found that appellant met the equal opportunity requirement, because he showed that his proposed accommodation, continued use of HCVs, is necessary to afford him an equal opportunity to use and enjoy the apartment.

But the district court determined that appellant's accommodation claim did not meet the reasonableness requirement, determining that it was not reasonable and would result in undue hardship to respondents because it would fundamentally alter the nature of respondents' policies. *See Hinneberg*, 706 N.W.2d at 229–30 (finding the reasonableness and undue hardship prongs intertwined, and finding that a proposed accommodation would cause undue hardship by fundamentally altering the nature of the Section 8 program if an exception were made for plaintiff for a residency requirement). Specifically relying on *Hinneberg*, the district court found that if respondents were required to make an ex-

ception and accept appellant's HCVs, this exception would "have the potential of swallowing the entire policy." We agree.

Respondents decided not to accept HCVs due to the administrative burdens involved; if they were required to allow appellant to use his HCV, they would be forced to undertake those burdens and continue a potentially endless lease with appellant, and contract with the public housing authority. Moreover, as the district court noted, granting this accommodation would likely encourage other similarly situated individuals to request the same accommodation, which would essentially force respondents' full participation in a program they sought to opt out of.

We reject appellant's argument that his proposed accommodation would not impose administrative or financial burdens because respondents continued to participate in the program for their three-bedroom townhouses at the time he requested his accommodation. It is undisputed that respondents were not participating in Section 8 programs for one- and two-bedroom apartments, and were phasing out their participation entirely. Thus, accommodating appellant would fundamentally alter the nature of their decision to end participation in the Section 8 HCV program for the housing complex in which appellant had resided, and would alter their phase-out plan. On this record, and following *Hinneberg*, we conclude that the district court did not err in concluding that it is not a reasonable accommodation under the MHRA to mandate respondents' participation in a voluntary program.

## DECISION

The district court properly granted summary judgment to respondents on appellant's claims of discrimination based on his status with regard to public assistance and disability because (1) respondents' refusal

to renew appellant's lease pursuant to their business decision to end participation in the Section 8 housing voucher program does not constitute discrimination based on appellant's status with regard to public assistance under the Minnesota Human Rights Act; (2) appellant failed to make a prima facie case that respondents discriminated against him by quoting a higher rental price; and (3) respondents' refusal to accept appellant's Section 8 housing vouchers does not constitute a refusal to make a reasonable accommodation for a tenant's disability under the Minnesota Human Rights Act.

**Affirmed.**