ALEXANDER, J.,
concurring.
[¶ 31] I am pleased to join the Court’s opinion. I write separately to note that the Maine Legislature has explicitly rejected the change in the law urged by the Dissent that would interpret current Maine law to mandate acceptance of onerous contract conditions that come with the Section 8 program by all landlords except those capable of assuming the heavy cost of litigation to demonstrate “business necessity” to avoid the contractual mandates.
[¶ 32] Since its inception, the Section 8 Housing Choice Voucher Program, established pursuant to 42 U.S.C.A. § 1437f(o) (West, Westlaw through P.L. 113-65 (excluding P.L. 113-54) approved 12-20-13) and 24 C.F.R. pt. 982 (2013),[7] has been a voluntary program with property owners free to choose to enter into lease contracts *64 with tenants supported by vouchers only if “the owner is willing to lease the unit under the program.” 24 C.F.R. § 982.302(b); see also Park Village Apartment Tenants Ass’n v. Mortimer Howard Trust, 636 F.3d 1150, 1161-62 (9th Cir. 2011), cert. denied — U.S.-, 132 S.Ct. 756, 181 L.Ed.2d 482 (2011); Edwards v. Hopkins Plaza Ltd. P’ship, 783 N.W.2d 171, 176 (Minn.Ct.App.2010).
[¶ 33] As the Court’s Opinion notes, the Section 8 program in Maine has been administered as a voluntary program. This litigation represents an attempt, promoted by the Maine Human Rights Commission, to convert the Section 8 program in Maine into a compulsory program and to secure by judicial action an amendment to the housing discrimination laws that the Maine Legislature explicitly refused to adopt.
[¶ 34] The record reflects that in 2007, the Maine Human Rights Commission supported an effort to amend former 5 M.R.S. § 4582 (2007), now 5 M.R.S. § 4581-A(4) (2013), to make it unlawful to decline to rent properties because of the additional contractual burdens imposed on owners as a condition for rental to individuals whose rent would be supported by Section 8 housing vouchers. L.D. 685, § 2 (123rd Legis.2007). This effort to change the discrimination laws from prohibiting different, special treatment of subsidized tenancies to requiring different, special treatment of subsidized tenancies failed. The provision mandating acceptance of the additional contractual burdens was stricken from the legislation that made other amendments to the Maine Human Rights Act. Comm. Amend. A to L.D. 685, No. S-162 (123rd Legis.2007). The other revisions of law were then enacted as P.L. 2007, ch. 243.
[¶ 35] The Legislature’s specific refusal to change the housing discrimination law from the interpretation we gave it in Catir v. Commissioner of the Department of Human Services, 543 A.2d 356 (Me.1988), is an indicator of legislative intent that must be respected.
[¶ 36] Our rules of statutory construction establish that when a law has been interpreted by a judicial opinion, we do not later change that interpretation absent “clear and explicit” statutory language demonstrating legislative intent to change prior case law. Caron v. Me. Sch. Admin. Dist. No. 27, 594 A.2d 560, 563 (Me.1991) (stating that, absent clear and explicit statutory language showing legislative intent to modify case law interpreting a statute, this Court will not interpret a statute to effect such a modification); see also Tripp v. Philips Elmet Corp., 676 A.2d 927, 930-31 (Me.1996) (same); Rubin v. Josephson, 478 A.2d 665, 671 (Me.1984) (same).
[¶ 37] Here there has been no “clear and explicit” statutory language demonstrating legislative intent to change the interpretation we adopted in Catir. To the contrary, there is an explicit refusal by the Maine Legislature to enact the change in the law supported by the Maine Human Rights Commission and apparently adopted by the dissent today. Such a major change of policy is a matter best left to resolution by the Maine Legislature after it considers all the implications of such a change. It is not a change that should be adopted by judicial action after the Legislature refused to make the change supported by the Maine Human Rights Commission.

. The Department of Housing and Urban Development regulations covering the voucher program, including the requirements imposed on property owners at 24 C.F.R. pt. 982, extend to eighty-two pages of double column, small print text in the Code of Federal Regulations. Access to and comprehension of those regulations may present a considerable challenge to many individual property owners covered by this law.