Greenacres Apartments, Inc., Appellant *v.* Bristol Township et al., Appellees.

Argued June 6, 1984, before Judges WILLIAMS, JR., BARRY and BLATT, sitting as a panel of three.

*Steven E. Wolfe, Fink, Fink & Associates,* for appellant.

*Clyde W. Waite,* for appellees.

OPINION BY JUDGE BLATT, October 19, 1984:

Greenacres Apartments, Inc. (Appellant) appeals here from an order of the Bucks County Court of Common Pleas which dismissed the Appellant's complaint in equity.

The Appellant owns and operates a large apartment complex located within Bristol Township (Township), and a township ordinance[1] provides for the assessment and collection of an annual five dollar inspection and registration fee for each rental unit.[2] In November, 1977, the Appellant filed an equity action against the Township and its board of supervisors, seeking to enjoin the assessment or collection of the fee for its apartments as well as a determination of the ordinance's validity. On December 19, 1980, a trial was conducted, and, on June 24, 1982, the Chancellor

---

[1] The Minimum Housing Standards Ordinance of the Township of Bristol, Pa., Ordinance 372 (May 17, 1961). The licensing fee for the inspections was implemented by resolution 76-151 of the Bristol Township Board of Supervisors. The Appellant has not contested the process or procedure by which the measures in question were adopted.

[2] Section 9(c) of the ordinance provides that the certificate of approval for each licensed and registered unit becomes invalid upon the unit's vacancy, and requires that the unit be inspected and determined fit for occupancy before the certificate may be reissued and the unit occupied.

filed her opinion and a decree nisi denying and dismissing the complaint. On May 31, 1983, the Appellant's exceptions to the Chancellor's adjudication were dismissed by the court below en banc, and the instant appeal followed.

We are, of course, mindful that our scope of review in equity matters is limited to determining whether or not the trial court committed an error of law or abused its discretion. Moreover, the equity court's decision will stand where there is sufficient evidence to support the Chancellor's findings and the reasonable inferences and conclusions which may be derived therefrom. *Quaker City Yacht Club v. Williams,* 59 Pa. Commonwealth Ct. 256, 429 A.2d 1204 (1981).

Initially, the Appellant argues that the ordinance is invalid because the evidence purportedly shows that inspection of the rental units is not performed regularly and, therefore, that the fee is not a licensing fee to defray costs but an invalid revenue raising measure.

After carefully reviewing the record, we believe that there is substantial evidence therein to support the trial court's finding that the inspections actually are conducted as the Township claims. The testimony of the Township's Assistant Director of Licenses and Inspections indicates that he employs two full time and three part time inspectors who work their way through the Township's apartment complexes in the course of each year. The Appellant itself introduced exhibits indicating that a substantial percentage[3] of the Township's rental units were inspected yearly.

_____

[3] The Appellant's exhibit showed that, for the years between 1975 and 1980, between twenty and forty percent of the units within the Township were inspected each year. The testimony shows that the practical problems associated with traveling to and about the complexes and with obtaining entrance to apartments prevents the actual inspection of each unit each year.

The Appellant additionally argues, however, that, because 100% of the rental units within the Township are not inspected each year, the receipt of fees covering the uninspected as well as the inspected units demonstrates that the ordinance is actually a revenue producing measure. It is suggested that the Township collects approximately $16,000 per year in fees, but has only "earned" fees for the units actually inspected, which would be a much smaller amount.

Accepting the Appellant's evidence as to yield as correct, it is apparent the fees collected are not part of an invalid revenue raising measure. A licensing fee, of course, is a charge which is imposed pursuant to a sovereign's police power for the privilege of performing certain acts, and which is intended to defray the expense of regulation. It is to be distinguished from a tax, or revenue producing measure, which is characterized by the production of large income and a high proportion of income relative to the costs of collection and supervision. *Meitner v. Township of Cheltenham*, 75 Pa. Commonwealth Ct. 46, 460 A.2d 1235 (1983); *see also National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 98 A.2d 182 (1953) and *Philadelphia Tax Review Board v. Smith, Kline & French Laboratories*, 437 Pa. 197, 262 A.2d 135 (1970). The costs of two full time and three part time inspectors, plus the expenses implicit in the clerical, administrative and registration functions testified to at the hearing, indicate to us that the Township is not realizing the production of a large income, and certainly not an income which is out of proportion to the costs of supervising the regulatory scheme. We will, therefore, reject the Appellant's challenge of the ordinance and licensing fee as an invalid revenue raising measure.

The Appellant further contends that the ordinance violates equal protection principles because it exempts

hotels and motels from the licensing fee and inspection requirements. Inasmuch as there is no fundamental right at stake and the challenged classification is not inherently suspect, the appropriate standard of review is, of course, the "rational basis" test under which the challenged classification must be sustained if it bears a rational relationship to a legitimate government interest, and any state of facts may reasonably be conceived to justify it. *McGowen v. Maryland,* 366 U.S. 420, 426 (1961).

We note that the ordinance's asserted purpose is to protect the public health, safety and welfare by ensuring that rental units comply with the minimum housing standards set forth in the ordinance. The need to ensure compliance with the minimum standards is obviously greater in the rental of homes or apartments, where the lessee typically has a longer commitment and greater obligations than in the rental of hotel or motel rooms, where guests can easily leave undesirable accommodations. Furthermore, the ordinance mandates inspections prior to the reletting of any vacated unit, which would impose an unmanageable burden if the units in question were to be rented on a daily basis. We must find, therefore, as did the court below, that a rational basis exists for the classifications created by the ordinance.

The Appellant additionally argues that the ordinance is unconstitutional and invalid as violative of state and federal constitutional guarantees protecting against illegal searches, seizures, and self incrimination. It notes that Section 11 of the ordinance provides that a Building Officer who has been unable to obtain consent to enter a unit and conduct an inspection may apply to a Justice of the Peace for a warrant to inspect any such units if he has reason to believe, based upon a complaint, that a violation exists therein.

He may also obtain a warrant for such entry and inspection where he asserts that the inspection is sought due to the lapse of time since the last inspection or because of conditions in the general area within which the premises are located. We agree with the court below that these warrant provisions contradict the Appellant's search and seizure contentions. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523 (1967).[4] Additionally we would note that the Appellant has, at best, very questionable standing to assert privacy expectations in property customarily rented to the public.

We will, therefore, affirm the order of the Court of Common Pleas of Bucks County.

### ORDER

AND Now, this 19th day of October, 1984, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

---

[4] *Camara*, of course, provided that, where consent has been refused, a warrant is generally required to inspect premises pursuant to a municipal fire, health or housing ordinance. Standards for issuing such warrant, however, do not necessarily depend upon knowledge of a particular dwelling, but may be based upon the passage of time, the nature of the building, or the condition of the entire area.