Allen **THOMPSON, Patrick Altiero,**
**and James Walstrom,**
**Appellants**

v.

**CITY OF ALTOONA CODE APPEALS**
**BOARD and City of Altoona.**

Commonwealth Court of Pennsylvania.

Argued Sept. 5, 2007.
Decided Oct. 2, 2007.

---

John D. Sisto, Altoona, for appellants.

Terrence E. Tomassetti, Altoona, for appellees.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Allen Thompson, Patrick Altiero and James Walstrom (Appellants) appeal from an order of the Court of Common Pleas of Blair County (trial court), which concluded that a forty-dollar ($40.00) annual licensing fee per residential rental unit imposed by Appellee City of Altoona (the City) constitutes a permissible regulatory fee, not an unconstitutional tax. We now affirm.

In May, 2002, the City enacted Ordinance No. 5501 (the Ordinance), thereby amending the Property Maintenance Code of the City of Altoona (the PMC). The Ordinance, in part, made it unlawful for any person, firm or corporation to operate, rent or let a residential rental unit without first acquiring a Residential Rental Unit License. The Ordinance also established a Rental Inspection Program (the Program) for rental units and imposed an annual fee of forty dollars ($40.00) for a "Conditional Housing Permit" or "Residential Rental Unit License."[1] The Program was integrated into the City's Codes and Inspections Department (the Department).

Appellants challenged the constitutionality of the fee before the City of Altoona Code Appeals Board (the Board), arguing that the forty-dollar ($40.00) fee is unconstitutional because it is not reasonably related to the cost of running the Program. Specifically, Appellants argued that the license fee is disproportionately high in comparison with the actual costs of operating the Program. The Board found that the fee charged was reasonably proportional to the cost of running the Program, and, thus, it was constitutional. Appellants appealed to the trial court, which granted a motion for *de novo* hearing, holding that the Board lacked jurisdiction to decide the constitutionality of the Ordinance and the fee it imposed.

A hearing was held on July 12, 2005, during which time the parties presented evidence regarding the fees collected and costs of the inspection program.[2]

Appellants presented evidence that upon implementation of the Program, the Department hired only two (2) additional employees to perform inspections at a

---

1. The Ordinance further amends the PMC, in part, to include Section 905, entitled FEE SCHEDULE, which provides that Conditional Housing Permits and Residential Rental Unit Licenses shall be renewed annually. The amount of the annual fee is established to be "forty ($40.00) dollars per dwelling unit for the first four (4) dwelling units and ten ($10.00) dollars for each additional dwelling unit per building or structure." (The Ordinance, attached to Appellants' brief as exhibit "A").

Appellant Patrick Altiero testified that Appellants are required to pay $120.00 over a three–(3–)year period, which covers the cost of one (1) inspection of a single-family dwelling. The cycle then begins again requiring the same payment over the next three (3) years for another inspection.

2. The parties stipulated that the testimony presented to the Board on November 20, 2003, is incorporated into the record before the trial court.

combined yearly salary of $70,000.[3] No additional clerical staff was hired. The parties stipulated that the budget for the Department increased by only $90,000 the first year of the Program. In its first three (3) years of operation (2002–2004), the Program collected $516,137 in fees.

The City presented the testimony of Omar Strohm, acting Finance Director and Personnel Director for the City. He testified that although the Department hired only two (2) additional inspectors upon implementing the Program, a third inspector devoted a substantial portion of his time to the Program. He calculated the labor costs for the three (3) inspectors over the three–(3–)year period to be $404,819. Additionally, clerical staff of the Department testified that they spent a substantial amount of time on duties relating to the administration of the Program. Mr. Strohm estimated that the cost of the time commitment of clerical staff to the Program amounted to $170,054 over the three–(3–)year period. He further testified that the direct costs of running the program, including mailing costs, inspector certification and materials, amounted to $33,766 during that time period. Indirect costs, such as insurance, payroll costs and administrative costs, totaled $30,536 over that period. Adding the capital cost related to the three (3) vehicles used for the Program, Mr. Strohm calculated the total cost of the Program over the three–(3–)year period to be $677,799. Hence, the City asserts that the total cost of the Program actually exceeded the gross revenues, resulting in a loss of approximately $160,000.

By opinion and order, dated October 25, 2006, the trial court denied Appellants' appeal of the constitutionality of the fee imposed. In so doing, the trial court wrote:

> We find the [C]ity's approximation of costs associated with the [P]rogram to be fair and reasonable. Certainly it is true that all three inspectors' salaries are not fairly attributable to the costs of running the [P]rogram where even the two inspectors who were hired spend some time on other matters. We agree with the [C]ity, however, that even if we exclude one of the inspectors' salaries, we still arrive at a cost that is reasonably commensurate with the fees collected. The cost of two inspectors for a three-year period would amount to approximately two hundred seventy thousand dollars ($270,000). When we add the cost of time spent on labor actually provided by the present clerical staff and the direct and indirect administration costs, we arrive at a number that somewhat exceeds five hundred thousand dollars. We would be obtuse to insist that the sum of expenses must reach the amount collected to the dollar. It is enough under the law that we can comfortably say the fees collected are reasonably commensurate with the costs. Accordingly, we find the forty-dollar annual fee to be a permissible licensing fee. . . .

(Trial court opinion, attached to Appellants' brief).

Appellants then appealed the matter to this Court.

On appeal,[4] Appellants argue that the forty-dollar ($40.00) annual licensing fee

---

**3.** Appellants assert that the combined salary was closer to $64,000.

**4.** Our standard of review is limited to determining whether the trial court abused its discretion, rendered a decision with lack of sup-

porting evidence, or clearly erred as a matter of law. *Commonwealth v. Tobin*, 828 A.2d 415 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 576 Pa. 726, 841 A.2d 533 (2003).

per residential rental unit constitutes a permissible regulatory fee or an unconstitutional tax.

■ It is well-settled that "[t]he power of taxation ... lies solely in the General Assembly of the Commonwealth acting under the aegis of the Constitution. Absent a grant or a delegation of the power to tax from the General Assembly, no municipality ... has any power or authority to levy, assess or collect taxes." *Mastrangelo v. Buckley*, 433 Pa. 352, 362–63, 250 A.2d 447, 452–53 (1969).

In *Talley v. Commonwealth*, 123 Pa. Cmwlth. 313, 553 A.2d 518, 519–20 (1989), this Court summarized the applicable law regarding the constitutionality of licensing fees, when we wrote:

> Appellant's argument before this Court as well as the trial court is that the ordinance is invalid because the amount of the license fee is not based upon the cost to the [municipality] for services provided to those made subject to the ordinance; and therefore, the license fee does nothing more than raise revenue for general governmental purposes.
>
> A license fee has been defined by our Supreme Court in *Mastrangelo v. Buckley*, 433 Pa. 352, 385–86, 250 A.2d 447, 464 (1969):
>
>> A license fee is a sum assessed for the granting of a privilege. In most instances, where a license is granted the City invariably incurs expense such as the cost of registration and inspection; it is only proper that the one who seeks and receives a license should bear this expense. To defray the cost of a license a fee is charged to the licensee; however, this fee must be commensurate with the expense incurred by the City in connection with the issuance and supervision of the license or privilege.
>
> (Footnote omitted.)

A license fee is distinguishable from a tax which is a revenue producing measure characterized by the production of a high proportion of income relative to the costs of collection and supervision. *Greenacres Apartments, Inc. v. Bristol Township*, 85 Pa.Cmwlth. 572, 482 A.2d 1356 (1984). Thus, if a license fee collects more than an amount commensurate with the expense of administering the license, it would become a tax revenue and cease to be a valid license fee. See *Stark v. Commonwealth*, 90 Pa. Cmwlth. 80, 494 A.2d 44 (1985).

The party challenging a license fee has the burden of proving that the fee is unreasonable. *Hill v. Borough of Dormont*, 90 Pa.Cmwlth. 10, 494 A.2d 15 (1985); *Stark.* All doubt must be resolved in favor of the reasonableness of the fee, since the municipality must be given reasonable latitude in anticipating the expense of enforcing the ordinance. *Hill; Stark.*

Here, Appellants argue that the forty-dollar ($40.00) annual residential rental unit licensing fee constitutes an impermissible and unconstitutional tax because the fee paid for the inspection is not commensurate with the administrative costs of the Program and merely imposes an illegitimate tax on landlords. They contend that the trial court erred as a matter of law in finding that the fee charged is not unreasonable and constitutes a legitimate licensing fee.

Appellants state that although the City testified at length regarding the costs of the program, the actual cost of hiring two (2) new inspectors is minute in comparison to the revenue generated by the fee. Appellants assert that the actual cost to the City in the first year was slightly over $90,000, as evidenced by the increased budget. They contend that the true ques-

tion should be "how much did it actually cost the City to implement the program?" They further contend that the trial court erred by accepting the estimate of the Department which placed the costs at $677,799 over a three–(3–)year period. Appellants contend that the City has presented its costs in a manner that gives the appearance that the Program is overly costly. Moreover, the Department's employees each continue to work 40 hours per week just as they did prior to the passing of the Ordinance and their duties in connection with the other areas administered by the Department have not changed. Also, the administrative staff received no additional wages following the passage of the Ordinance. Thus, the work performed was at no additional cost to the City. The administrative staff may be doing more work; however, it is being done at no additional cost to the City. Also, the two (2) newly hired inspectors do not perform rental inspections exclusively.

Appellants further argue that we must assume that the other revenue generated from the other licensing fees imposed by the City were not unreasonable prior to the passage of the Ordinance. The administration of those programs continues to be carried out by the same employees who testified in the July, 2005, hearing before the Board. If no administrative staff has been added to the Department and the existing employees receive no additional compensation, Appellants contend that there is no additional cost to the City for clerical/administrative employees. No other programs requiring a licensing fee were reduced based upon the lower administrative costs to the City following passage of the Ordinance.

Appellees assert that the evidence in the case overwhelmingly demonstrates that the annual $40.00 charge is intended to help defray the costs of administering the Program and is not an invalid revenue raising measure. The testimony of Mr. Strohm is buttressed by the testimony of several of the clerical workers who testified regarding the estimated percentage of time they devote to the Program. Appellees contend that the fees actually fail to keep pace with the costs of administering the Program. Appellees point to several cases where this Court upheld the constitutionality of a fee after considering costs similar to those considered in the case at hand. *See Greenacres Apartments, Inc. v. Bristol Township,* 85 Pa.Cmwlth. 572, 482 A.2d 1356 (1984); *Tobin; Simpson v. City of New Castle,* 740 A.2d 287 (Pa.Cmwlth. 1999).

■ We must agree with the trial court and Appellees that Appellants have failed to meet their burden to prove that the fee is unreasonable. During the first three (3) years, the Program collected $516,137 in fees. The City presented testimony regarding the costs, totaling $677,799, that it attributed to the Program. Despite Appellants urging that the costs were exaggerated, the trial court chose to accept many of the costs as testified to by the witnesses employed by the Department. Ultimately, the trial court estimated that the cost of the Program during the first three (3) years was slightly in excess of $500,000, which was reasonably commensurate with fees collected. We cannot conclude that the trial court erred in finding that the estimated costs of the Program was slightly in excess of $500,000. Moreover, we must agree that the estimated cost is sufficiently commensurate with the fees collected, such that the trial court properly concluded that the fee was reasonable.

■ While the Appellants appears to argue that it was improper for the trial court to consider costs associated with the Program that did not result in a dollar-for-

dollar increase in the budget of the Department, we cannot find any cases to support such a position, nor did Appellants cite any cases in support of that position. While the Department's budget increased by only $90,000 the first year, it is clear that the Department had devoted or redirected to the Program additional resources which had been included in its pre-Program budget and which were not represented within the $90,000 increase. In justifying its licensing fee, the City was entitled to include all costs attributable to the Program, not just those costs that resulted in an increase in the Department's budget.

Accordingly, we must affirm the order of the trial court.

### ORDER

AND NOW, this 2nd day of October, 2007, the order of the Court of Common Pleas of Blair County is hereby affirmed.