COCHRAN, Judge
Appellant City of Minneapolis (the city) challenges the district court's order granting summary judgment to respondents/cross-appellants Fletcher Properties, Inc., et al.[1] (collectively, Fletcher). The city argues that the district court erred in concluding that the city's 2017 amendments to Title 7 of the Minneapolis Code of Ordinances (the amendments) violate Fletcher's substantive-due-process and equal-protection rights under the Minnesota Constitution. By notice of related appeal, Fletcher argues that the district court erred in concluding that the amendments do not implicate a fundamental right and in applying the rational-basis test to Fletcher's constitutional claims. Because we conclude that the amendments do not implicate a fundamental right and Fletcher's constitutional claims are subject to rational-basis analysis, and because the amended ordinance meets the rational-basis *415 test, we reverse and remand for the district court to conduct further proceedings.
FACTS
Section 8 of the United States Housing Act of 1937 (Section 8) provides, among other programs, tenant-based housing assistance through housing choice vouchers (vouchers). 42 U.S.C. §§ 1437f(b)(1)-(2), f(o) (2012 & Supp. V 2017). The Minneapolis Public Housing Authority (MPHA) administers the Section 8 program in Minneapolis. Under the Section 8 program, the MPHA determines the fair market rent for a rental unit and establishes payment standards that determine how much a voucher holder will pay toward the established fair market rent and how much the MPHA will subsidize.
A 2016 survey of Minneapolis rental listings conducted by HOME Line, a nonprofit organization that provides legal advice to renters, revealed that only 57% of the particular listings surveyed were within rent limits that are affordable to voucher holders and, of those affordable listings, only 23% would accept vouchers.[2] The HOME Line survey also revealed that, of the limited properties accepting vouchers, the vast majority were concentrated in high-poverty zip codes in north Minneapolis.
Each year the MPHA administers about 4,870 vouchers, serving approximately 17,000 people. Of those 17,000 people, 53% are children, 84% are people of color, 78% are families headed by women, and 41% include households where someone has a disability. The average income for voucher holders is just over $ 15,000. The inability to find housing is a daily occurrence for voucher holders. At any given time, about 250 voucher families are searching for housing in Minneapolis. Minneapolis has a tight rental market in general, with a vacancy rate of about 4%. There is even less availability for low-income households, with a vacancy rate of only about 2%. Some landlords explicitly state in their property advertisements that they will not accept vouchers.
When a voucher holder identifies a qualifying rental unit, the MPHA conducts an inspection of the unit to determine whether it satisfies certain livability standards. If the unit passes the inspection, the MPHA enters into a payment agreement with the landlord by using a form known as a Housing Assistance Payment (HAP) contract. The MPHA must use the HAP contract or request approval from the U.S. Department of Housing and Urban Development to adapt the contract. The HAP contract has standardized language, is used nationally, and has been in effect for years. Hundreds of thousands of landlords have signed the agreement, and over 1,000 landlords participating in the Section 8 program in Minneapolis have used the HAP contract.
In June 2015, the city council published a notice of its intent to introduce amendments to its civil rights ordinance, prohibiting discrimination based on any requirement of public assistance programs, including the Section 8 program. Following the notice, the city council engaged in nearly two years of discussion, study, research, and listening sessions with those who might be affected by the amendment, including landlords, voucher holders, and the MPHA. The city's request for committee action identified increasing affordable housing opportunities for voucher holders as a goal of the amendments. The request for committee action *416 noted that voucher holders experience "a denial of housing opportunities in high opportunity areas based on their use of rental subsid[ies]" and that "the [c]ity would like to broaden the opportunities for access to housing that is otherwise not affordable to families and individuals without a Housing Choice Voucher."
In March 2017, the Minneapolis city council enacted amendments to its civil rights ordinance, Title 7 of the Minneapolis Code of Ordinances (the amended ordinance), with an effective date of May 1, 2018. Minneapolis, Minn., Ordinance No. 2017-010 (Apr. 1, 2017). In December 2017, the Minneapolis city council adopted Ordinance No. 2017-078, further amending the amended ordinance. Minneapolis, Minn., Ordinance No. 2017-078 (Dec. 16, 2017).[3]
The final amendments make it an "unlawful discriminatory practice" for a landlord or any agent to use "any requirement of a public assistance program [as] a motivating factor" to "refuse to sell, rent or lease, or refuse to offer for sale, rental or lease; or to refuse to negotiate for the sale, rental, or lease of any real property." Minneapolis, Minn., Code of Ordinances (MCO) § 139.40(e)(1) (2017). Under the amended ordinance, a landlord's decision to refuse to rent a property for reasons related to the requirements of the Section 8 program constitutes an "unlawful discriminatory practice." Id. Thus, the amended ordinance prohibits landlords from declining to rent to voucher holders who meet the landlords' other requirements, even if the landlords have legitimate business reasons not to participate in the Section 8 program.
Under the amended ordinance, a landlord has an affirmative defense to a claim that the landlord's refusal to rent property constitutes an unlawful discriminatory practice if "the refusal, denial, or withholding is due to a requirement of a public assistance program and that requirement would impose an undue hardship" on the landlord. Id. "Undue hardship" is defined as:
[A] situation requiring significant difficulty or expense when considered in light of a number of factors to be determined on a case-by-case basis. These factors include, but are not limited to:
(1) The nature and net cost of complying with any requirement of a public assistance program, taking into consideration existing property management processes;
(2) The overall financial resources of the landlord, taking into consideration the overall size of the business with respect to the number of its employees, and the number, type, and location of its housing stock; and
(3) The impact of complying with any requirement of a public assistance program upon the business and dwelling.
MCO § 139.20 (2017). In addition, the amended ordinance exempts four classes of rental properties from its anti-discrimination provisions related to public assistance programs: (1) a room in an owner-occupied single-family dwelling; (2) a single-family dwelling or single dwelling unit being rented for no more than 36 months by an owner who homesteaded the unit at the start of the rental period; (3) a unit of an owner-occupied duplex; and (4) a previously homesteaded property of an owner *417 on active military duty. MCO § 139.30(b)(1)-(4) (2017).
When the city council passed the amendments, it also directed staff to report on the development of a landlord incentive fund to offset property-damage claims by landlords. The fund went into effect on January 1, 2018, and allows a landlord renting to a voucher holder to request reimbursement for damage in excess of the security deposit.
In June 2017, Fletcher filed a complaint seeking a declaration that the amended ordinance is unlawful and violates the Minnesota Constitution. Fletcher moved for summary judgment, arguing that (1) the amended ordinance is preempted by Minnesota law, (2) the amended ordinance deprives Fletcher of its right to substantive due process, (3) the amended ordinance deprives Fletcher of its right to equal protection under the law, (4) the amended ordinance constitutes an unlawful regulatory taking, and (5) the amended ordinance deprives Fletcher of its right to freedom of contract. The city filed a cross-motion for summary judgment. The district court granted Fletcher's summary-judgment motion and denied the city's summary-judgment motion, concluding that the amended ordinance deprives Fletcher of its rights to substantive due process and equal protection under the Minnesota Constitution. The district court did not address Fletcher's other claims. In a subsequent order, the district court enjoined the city from enforcing the provisions of the amended ordinance that it found to be unconstitutional and held that Fletcher's other three claims are moot.
This appeal follows.
ISSUES
I. Do the amendments implicate a fundamental right?
II. Did the district court err in concluding that the amended ordinance violates Fletcher's substantive-due-process rights under the Minnesota Constitution?
III. Did the district court err in concluding that the amended ordinance violates Fletcher's equal-protection rights under the Minnesota Constitution?
IV. Did the district court err in concluding that Fletcher's other claims are moot?
ANALYSIS
The district court shall grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01.[4] Neither party argues that there are any material facts in dispute in this case. When the material facts are undisputed, this court reviews a district court's legal conclusions de novo. RAM Mut. Ins. Co. v. Rohde , 820 N.W.2d 1, 6 (Minn. 2012). The constitutionality of an ordinance presents a question of law, which we review de novo. Dean v. City of Winona , 843 N.W.2d 249, 258 (Minn. App. 2014), review granted *418 (Minn. May 20, 2014) and appeal dismissed (Minn. Aug. 5, 2015).
Fletcher argues that the amended ordinance is facially unconstitutional under both the due-process and equal-protection clauses of the Minnesota Constitution. A municipal ordinance is presumed to be constitutional. Minn. Voters All. v. City of Minneapolis , 766 N.W.2d 683, 688 (Minn. 2009). A party challenging the constitutionality of legislation "must meet the very heavy burden of demonstrating beyond a reasonable doubt" that the legislation is unconstitutional. Otto v. Wright County , 899 N.W.2d 186, 191 (Minn. App. 2017), aff'd , 910 N.W.2d 446 (Minn. 2018). A facial challenge to the constitutionality of an ordinance requires a showing that no set of circumstances exists under which the ordinance would be valid. Minn. Voters All. , 766 N.W.2d at 688.
In its summary-judgment order, the district court applied the rational-basis test, rather than strict scrutiny, to analyze Fletcher's substantive-due-process and equal-protection claims. The city argues that the district court correctly determined that the rational-basis test applies to Fletcher's constitutional claims but that the district court erred in concluding that the amended ordinance violates Fletcher's substantive-due-process and equal-protection rights. By notice of related appeal, Fletcher argues that the district court erred in concluding that the rational-basis test applies. Fletcher contends that the amendments implicate a fundamental right, requiring the application of strict scrutiny. Fletcher also maintains that the amended ordinance is unconstitutional under both the rational-basis test and strict scrutiny. We first consider whether the amendments implicate a fundamental right, requiring strict-scrutiny review, and then address Fletcher's substantive-due-process and equal-protection claims.
I. The district court correctly determined that the amendments do not implicate a fundamental right and that Fletcher's constitutional claims are subject to rational-basis analysis.
The city argues that regulations of rental housing do not implicate a fundamental right. Fletcher argues that the amendments implicate its property rights and that its property rights are fundamental rights. "A fundamental right is one that is 'objectively, deeply rooted in this Nation's history and tradition.' " State v. Holloway , 916 N.W.2d 338, 345 (Minn. 2018) (quoting Washington v. Glucksberg , 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L.Ed.2d 772 (1997) ). "Fundamental rights are implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Id. (quotation omitted). Factors to consider in determining whether a right is fundamental include historical practice and whether the right has uniform and continuing acceptance across the nation. Id. at 345-46. When a fundamental right is implicated in a substantive-due-process or equal-protection claim, we apply strict-scrutiny analysis, but when a fundamental right is not implicated, we apply rational-basis analysis. See id. (explaining fundamental-rights analysis under substantive-due-process claims); see also State v. Garcia , 683 N.W.2d 294, 298 (Minn. 2004) (explaining fundamental-rights analysis under equal-protection claims).
Fletcher cites Thiede v. Town of Scandia Valley , 217 Minn. 218, 14 N.W.2d 400 (1944), for the proposition that laws impacting property rights implicate a fundamental right. In Thiede , the Minnesota Supreme Court considered a municipality's attempt to forcibly remove a family from its home. 14 N.W.2d at 406. The Minnesota Supreme Court noted that "[a] man's right *419 to occupy his home is inviolable, irrespective of the meagerness or abundance of his wealth," and that courts have held for centuries that "the owner of a freehold cannot, without his consent, be removed therefrom to his legal settlement." Id. at 405-06. Thiede dealt with the right to occupy a home, not the right to rent one's property. Fletcher's argument would extend Thiede beyond its narrow holding to a broader principle that laws impacting any property right, including the right to rent property, implicate a fundamental right. We are not persuaded that Thiede should be extended beyond its narrow holding.
The Minnesota Supreme Court has more recently applied rational-basis analysis in considering legislation affecting rental units. See Hegenes v. State , 328 N.W.2d 719, 722 (Minn. 1983) (holding that a statute distinguishing between rental properties of three units or less and properties with four units or more did not violate landlords' equal-protection rights under the rational-basis test). We have also applied the rational-basis test when addressing a municipal ordinance requiring mobile-home-park owners who close their parks to pay a displaced resident the reasonable cost of relocating to another mobile-home park. Arcadia Dev. Corp. v. City of Bloomington , 552 N.W.2d 281, 284, 288 (Minn. App. 1996), review denied (Minn. Oct. 29, 1996). In that case, we noted that "[g]overnments have broad powers and legitimate interests in regulating housing conditions in general and the landlord-tenant relationship in particular" and concluded that the ordinance satisfied the "deferential rational basis test for equal protection and substantive due process purposes." Id. at 286, 288. These cases demonstrate that Minnesota does not have a historical practice of treating the right to rent property as a fundamental right, and Fletcher does not cite any case in which Minnesota has treated the right to rent property as a fundamental right.
Cases from other jurisdictions similarly demonstrate that there is no uniform and continuing acceptance across the nation for treating the right to rent property as a fundamental right. See, e.g. , Hills Dev., Inc. v. City of Florence, Kentucky , No. 15-175-DLB-CJS, 2017 WL 1027586, at *7 (E.D. Ky. Mar. 16, 2017) ("[T]here is no recognized fundamental right to use your property however you wish or rent your property."); Longacre v. W. Sound Util. Dist. , No. C16-5122RBL, 2016 WL 3186855, at *2 (W.D. Wash. June 8, 2016) (stating that "extending constitutional protections to economic and property rights has been largely discredited" and that even if depriving an individual of property implicates a fundamental right, interfering with the ability to use property, including renting or selling it, does not implicate a fundamental right (quotation omitted)); Greenacres Apartments, Inc. v. Bristol Township , 85 Pa.Cmwlth. 572, 482 A.2d 1356, 1359 (1984) (indicating that an ordinance requiring landlords to pay licensing and inspection fees does not implicate a fundamental right). Fletcher does not cite any caselaw from other jurisdictions treating the right to rent property as a fundamental right.
Our review of the caselaw leads us to conclude that neither Minnesota nor the nation overall has a history of recognizing the right to rent property as a fundamental right. The right to rent property is not a right "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." Holloway , 916 N.W.2d at 345 (quotation omitted). We therefore conclude that the amendments do not implicate a fundamental right and that rational-basis analysis *420 applies to Fletcher's substantive-due-process and equal-protection claims.
II. The district court erred in concluding that the amended ordinance violates Fletcher's substantive-due-process rights.
We now turn to the question of whether the district court erred in concluding that the amended ordinance violates Fletcher's substantive-due-process rights.[5] "[S]ubstantive due process protects individuals from certain arbitrary, wrongful government actions." In re Linehan , 594 N.W.2d 867, 872 (Minn. 1999) (quotation omitted). "Where no fundamental right is at stake, judicial scrutiny is not exacting and substantive due process requires only that the statute not be arbitrary or capricious; in other words, the statute must provide a reasonable means to a permissible objective." Boutin v. LaFleur , 591 N.W.2d 711, 716 (Minn. 1999). For a law to be upheld against a substantive-due-process claim, the rational-basis test requires: "(1) that the act serve to promote a public purpose, (2) that the act not be an unreasonable, arbitrary or capricious interference with a private interest, and (3) that the means chosen bear a rational relation to the public purpose sought to be served." Id. at 718 (quotations omitted). "Legislation will fail rational basis review only when it rests on grounds irrelevant to the achievement of a plausible governmental objective." State v. Eakins , 720 N.W.2d 597, 601 (Minn. App. 2006) (quotation omitted). Although Fletcher claimed only that the amended ordinance violates its substantive-due-process rights under the Minnesota Constitution, and did not raise a claim under the United States Constitution, we note that "[e]ssentially the same analysis and standards apply under the" United States Constitution. Lukkason v. 1993 Chevrolet Extended Cab Pickup , 590 N.W.2d 803, 806 (Minn. App. 1999), review denied (Minn. May 18, 1999).
In support of its motion for summary judgment, the city argued to the district court that the amended ordinance rationally serves the public purpose of increasing housing opportunities for voucher holders. But the district court determined that the amended ordinance's purpose is to reduce prejudice-based discrimination in the housing market and addressed only whether the amended ordinance rationally serves that purpose. On appeal, the city argues that the district court erred in refusing to consider whether the amended ordinance rationally serves the public purpose of increasing housing opportunities for voucher holders. The city further argues that the amended ordinance rationally serves that public purpose, as well as the public purposes of reducing prejudice-based discrimination and reducing the disparate impact that results from landlords' decisions not to participate in the Section 8 program. Fletcher argues that the amended ordinance does not rationally serve any of the city's proffered public purposes. We first address whether the district court erred in failing to consider the public purpose of increasing housing opportunities for voucher holders and then consider whether the amended ordinance rationally serves a proper public purpose.
A. The district court erred in declining to consider the public purpose of increasing housing opportunities for voucher holders.
Rational-basis analysis requires only that "the act serve to promote a *421 public purpose," not that the legislature identified a specific public purpose when it passed the challenged law. Boutin , 591 N.W.2d at 718. In Boutin , the supreme court analyzed whether a statute violated an individual's substantive-due-process rights under the Minnesota and United States Constitutions. Id. In outlining the rational-basis test to be applied to a substantive-due-process claim, the supreme court cited federal caselaw to note that any rationale that a legislature could have had for enacting a law can validate the law. Id. at 717 (citing United States v. Osburn , 955 F.2d 1500, 1505 (11th Cir. 1992) ); see also Rio Vista Non-Profit Hous. Corp. v. County of Ramsey , 335 N.W.2d 242, 245-46 (Minn. 1983) (explaining that "[v]arious purposes can be attributed to the legislature" and "[t]he legislation will be sustained as having a rational basis if any conceivable state of facts supports it"); Eakins , 720 N.W.2d at 601 ("Legislation will fail rational basis review only when it rests on grounds irrelevant to the achievement of a plausible governmental objective." (emphasis added) (quotation omitted)); cf. U.S. Dep't of Agric. v. Moreno , 413 U.S. 528, 534, 93 S. Ct. 2821, 2825, 37 L.Ed.2d 782 (1973) (noting that where a statutory classification is irrelevant to the stated purpose of an act, it can be upheld against an equal-protection claim if the challenged classification "rationally further[s] some legitimate governmental interest other than those specifically stated in the congressional 'declaration of policy' ").
In its summary-judgment order, the district court determined that "even if the overall goal of the [amended ordinance] is to increase stable housing opportunities, the more specific goal is to accomplish that increase by eliminating discriminatory practices." The district court reached this conclusion because the amendments that the city adopted were included in Title 7 of the Minneapolis Code Ordinances, which pertains to civil rights. Yet, as the district court itself acknowledged, the amended ordinance serves the public purpose of increasing housing opportunities for voucher holders. Increasing housing opportunities for voucher holders is a plausible public purpose that could satisfy rational-basis analysis. Additionally, the city's request for committee action specifically identified increasing housing opportunities as a goal of the amendments. The request for committee action noted that voucher holders experience "a denial of housing opportunities in high opportunity areas based on their use of rental subsid[ies]" and that "the [c]ity would like to broaden the opportunities for access to housing that is otherwise not affordable to families and individuals without a Housing Choice Voucher." The fact that the amendments were codified in Minneapolis's civil-rights ordinance, and may also serve the public purpose of reducing prejudice-based discrimination, does not eliminate increasing housing opportunities as a public purpose that the amended ordinance serves. Because increasing housing opportunities for voucher holders is a plausible public purpose, and because the city identified increasing housing opportunities for voucher holders as an objective prior to passing the amendments, the district court erred in not considering whether the amended ordinance rationally serves that public purpose.
On de novo review, we next consider whether the amended ordinance rationally serves the public purpose of increasing housing opportunities for voucher holders. The amended ordinance satisfies the rational-basis test if the amended ordinance (1) serves to promote the public purpose of increasing housing opportunities for voucher holders, (2) is not an unreasonable, arbitrary, or capricious interference with a *422 private interest, and (3) uses means that bear a rational relation to the public purpose of increasing housing opportunities. Boutin , 591 N.W.2d at 718.
B. The amended ordinance serves to promote the public purpose of increasing housing opportunities for voucher holders.
The city argues that the amended ordinance serves to promote the valid public purpose of increasing housing opportunities for voucher holders. Fletcher argues that the amended ordinance does not serve to promote this public purpose because the MPHA already has a high placement rate for voucher holders. We agree with the city that the amended ordinance serves to promote the public purpose of increasing housing opportunities for voucher holders. As this court has stated, "[i]ncreasing affordable housing availability is a valid goal." Edwards v. Hopkins Plaza Ltd. P'ship , 783 N.W.2d 171, 179 (Minn. App. 2010). At any given time, about 250 voucher families are searching for housing in Minneapolis. Even if the MPHA has a high placement rate, further increasing the housing opportunities for voucher holders is a valid goal and serves a public purpose.
C. The amended ordinance is not an unreasonable, arbitrary, or capricious interference with a private interest.
The city argues that it undertook a long and deliberative process in adopting the amended ordinance and that the amended ordinance is not unreasonable, arbitrary, or capricious. Fletcher argues that the amended ordinance is unreasonable, arbitrary, and capricious because it fails to address actual impediments to placing voucher holders in stable housing. Fletcher contends that criminal background checks, credit histories, and rental backgrounds are significant barriers to voucher holders finding housing and that the city should have focused on those issues, rather than prohibiting landlords from declining to accept vouchers for business reasons.
It is undisputed that the amended ordinance will interfere with landlords' private interests. Under the amended ordinance, landlords may not decline to participate in the Section 8 program, even if they have legitimate business reasons to do so. And participating in the Section 8 program will require landlords to use the standardized HAP agreement, even if they object to certain provisions in the agreement. This is an interference with their private interests. But interference with a private interest alone is not enough to find that the amended ordinance violates a property owner's substantive-due-process rights. Dean , 843 N.W.2d at 260. The interference must also be unreasonable, arbitrary, or capricious. Id.
Here, the summary-judgment record shows otherwise. Over 1,000 landlords voluntarily participate in the Section 8 program in Minneapolis, and hundreds of thousands of landlords participate nationwide. Furthermore, the city reduced the degree of interference with landlords' private interests by providing significant time to adjust before the amendments went into effect, creating a hardship defense, and creating a landlord incentive fund to address property-damage issues. Thus, we cannot conclude that the interference is unreasonable. Nor can we conclude that it is arbitrary or capricious. The city council adopted the amended ordinance in an effort to increase housing opportunities for voucher holders after it found that there is a shortage of available housing. Its conclusions are supported by the HOME Line study. The interference with landlords' private interests created by the amended ordinance is not unreasonable, capricious, or *423 arbitrary in light of the amended ordinance's purpose of increasing housing opportunities for voucher holders.
Fletcher argues that other options, such as credit counseling, would have been more helpful in increasing housing opportunities. But even if Fletcher is correct, the fact that other services might also increase housing opportunities does not make the amended ordinance unreasonable, arbitrary, or capricious. Where the reasonableness of an ordinance is debatable, we will not interfere with legislative discretion. Id. at 261 n.3 ; see also Holt v. City of Sauk Rapids , 559 N.W.2d 444, 445 (Minn. App. 1997) ("If the reasonableness of an ordinance is debatable, the courts will not interfere with the legislative discretion." (quotation omitted)), review denied (Minn. Apr. 24, 1997). In light of the amended ordinance's purpose of increasing housing opportunities, it is more than merely debatable whether the amended ordinance's interference with landlords' private interests is reasonable. Accordingly, it is not for the courts to interfere with the city's legislative discretion. See Dean , 843 N.W.2d at 261 n.3.
D. The amended ordinance uses means that are rationally related to the purpose of increasing housing opportunities for voucher holders.
The city argues that the amended ordinance bears a rational relation to the amended ordinance's public purpose of increasing housing opportunities for voucher holders. Fletcher argues that the means that the amended ordinance uses are not rationally related to the purpose of increasing housing opportunities for voucher holders because there are other less burdensome ways to make the administration of the voucher program more appealing to landlords. Fletcher further argues that the amended ordinance will increase landlords' costs, requiring an increase in rent, which could reduce the number of units available for voucher holders.[6] We are not persuaded by Fletcher's arguments.
Fletcher's argument seeks to put the burden on the city to prove that the amended ordinance is the best possible way to increase housing opportunities. But to succeed in its facial challenge, Fletcher carries the burden to show that no set of circumstances exists under which the amended ordinance would be valid. Minn. Voters All. , 766 N.W.2d at 688. Fletcher's conjecture that increased costs could reduce housing opportunities is insufficient to demonstrate that there is no set of circumstances under which the amended ordinance would be valid.
Under this prong of the substantive-due-process analysis, the amended ordinance satisfies the rational-basis test if it uses a means that bears a rational relation to its public purpose. Boutin , 591 N.W.2d at 718. There is no dispute that certain landlords do not accept vouchers. The HOME Line survey that the city council considered before passing the amendments found that only 23% of housing units that were affordable for voucher holders actually accept vouchers. Requiring landlords who currently do not accept vouchers to accept them (except where a hardship is shown)
*424 bears a rational relation to the amended ordinance's public purpose of increasing housing opportunities for voucher holders. Fletcher has not met its burden to show that the amended ordinance does not use means that are rationally related to the public purpose of increasing housing opportunities for voucher holders.[7]
E. The amended ordinance does not create an unconstitutional presumption.
The city argues that the district court erred in concluding that the amended ordinance violates Fletcher's substantive-due-process rights by creating an irrefutable presumption that a landlord's refusal to accept vouchers is due to prejudice-based discrimination. Fletcher counters that it chooses not to participate in the Section 8 program for business reasons and that the district court correctly concluded that the amended ordinance creates an unconstitutional presumption that landlords' decisions not to participate in the Section 8 program result from prejudice and malice.
Fletcher cites to Edwards to note that we held that it is not unlawful under the Minnesota Human Rights Act (MHRA) for a landlord to refuse to rent to Section 8 tenants if the property owner does not want to participate in the Section 8 program for legitimate business reasons. 783 N.W.2d at 173. In that case, we discussed the requirements for a tenant in the Section 8 program to show that a landlord discriminated against him under the MHRA based on his "status with regard to public assistance." Id. at 174-75. We noted that, under the MHRA, a tenant can establish that a landlord discriminated against him with direct evidence of discrimination based on the tenant's status or by creating a presumption of discrimination, which a landlord can rebut by articulating a legitimate nondiscriminatory reason for the landlord's actions. Id. at 180 ; see also McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (establishing framework to create a presumption of discrimination under Title VII of the Civil Rights Act of 1964). Fletcher argues that Edwards stands for the proposition that, under the Minnesota Constitution, the city cannot prohibit landlords from refusing to participate in the Section 8 program for legitimate business reasons and that the city must allow landlords an opportunity to rebut any presumption that their decision was not based on legitimate business reasons.
As an initial matter, we note that in its motion for summary judgment, Fletcher cited Edwards only to support its arguments that the amended ordinance is preempted by state law and violates the right to freedom of contract, claims that the district court did not address. Fletcher did not argue in district court that the amended ordinance's failure to allow landlords to prove that they have legitimate business reasons for refusing to participate in the Section 8 program violates Fletcher's substantive-due-process rights. Appellate courts generally will not consider matters not argued to and considered by the district court. Thiele , 425 N.W.2d at 582. Accordingly, Fletcher's argument that Edwards supports its substantive-due-process constitutional claim is not properly before this court.
*425 Nevertheless, we note that Edwards dealt with the statutory language of the MHRA, not with substantive-due-process rights protected by the Minnesota Constitution. 783 N.W.2d at 174-75. In Edwards , we determined that the language of the MHRA making it unlawful discrimination to refuse to rent because of "status with regard to public assistance" does not prohibit landlords from refusing to participate in the Section 8 program for legitimate business reasons. Id. at 178. We distinguished the language of the MHRA from a Massachusetts statute that, like the amended ordinance, prohibits refusing to participate in the Section 8 program due to "any requirement of such ... housing subsidy program. " Id. We did not address whether a requirement such as that in the amended ordinance or the Massachusetts statute would be unconstitutional. Id. at 178-79. We also noted that "the issue of ensuring affordable housing availability is an issue for the Minnesota Legislature or the United States Congress, which have the power to establish policy and enact laws in this area." Id. at 179.
The fact that the city decided to address this issue in a different manner than the Minnesota Legislature goes to Fletcher's claim that the amended ordinance is preempted by state law, and the district court must address that claim on remand. But our conclusion that the MHRA requires a showing of prejudicial intent to demonstrate unlawful discrimination because of "status with regard to public assistance" does not mean that a law prohibiting landlords from declining to participate in the Section 8 program for business reasons is unconstitutional.
Fletcher further argues that the amended ordinance creates an unconstitutional presumption of prejudiced-based intent, analogizing to Twin City Candy & Tobacco Co. v. A. Weisman Co. , 276 Minn. 225, 149 N.W.2d 698 (1967). In Weisman , the Minnesota Supreme Court held unconstitutional a statute that made it a misdemeanor to sell cigarettes below cost and provided a civil right of action for anyone injured by a violation of the statute. 149 N.W.2d at 700-01. The statute stated that "sale of cigarettes below cost in the wholesale and retail trade is declared by the legislature to have the intent or effect of injuring a competitor, destroying or lessening competition, and is deemed an unfair and deceptive business practice and an unfair method of competition." Id. at 700 (emphasis omitted) (quoting Minn. Stat. § 325.64 (1966) ). The purpose of the statute was to protect the public by prohibiting such unfair practices. Id. The supreme court determined that there was an insufficient "relation between the measures taken and the evil to be suppressed" because the law "afforded no opportunity to show that a sale is with innocent intent or without predatory effect." Id. at 702.
Weisman is distinguishable from this case. The purpose of the law in Weisman was to prohibit predatory sales below cost, and the supreme court found it unconstitutional because it prohibited even sales without a predatory intent or effect. Id. In contrast, the purpose of the amended ordinance is to increase housing opportunities for voucher holders. Requiring landlords to participate in the Section 8 program-regardless of whether they have business reasons not to participate-is directly related to the amended ordinance's public purpose. Furthermore, the amended ordinance does not create a presumption that landlords' decisions not to participate in the Section 8 program are due to prejudiced-based discrimination, as Fletcher asserts. Rather, the amended ordinance prohibits landlords from declining to participate in the Section 8 program even if there is no prejudice behind their *426 decision. Thus, there is no presumption that a landlord's decision not to participate in the program is due to prejudice.
The amended ordinance is more comparable to a statute that the Minnesota Supreme Court held constitutional in Fed. Distillers, Inc. v. State , 304 Minn. 28, 229 N.W.2d 144, 160 (1975). That case dealt with a statute requiring every licensed distiller of liquor to offer their products for sale to all Minnesota wholesalers on an equal basis. Fed. Distillers , 229 N.W.2d at 149. In challenging the law, the plaintiffs cited Weisman and argued that there were many legitimate business reasons justifying a distiller's refusal to sell to a particular wholesaler. Id. at 157. The supreme court distinguished the case from Weisman , noting that the statute did not establish that an alleged violation was an "intentional injury to other competing distillers" as Weisman did with cigarette sales. Id. at 159. The statute at issue in Fed. Distillers required licensed distillers to sell to all wholesalers even if there were legitimate business reasons not to do so. Id. at 157. Similarly, the amended ordinance prohibits landlords from refusing to accept vouchers even if there are legitimate business reasons not to accept them. Neither law creates a presumption that the conduct at issue is motivated by malice or prejudice. The amended ordinance, like the challenged statute in Fed. Distillers , is distinguishable from Weisman , and does not create an unconstitutional presumption.
Because the amended ordinance rationally serves a legitimate public purpose, is not an arbitrary, capricious, or unreasonable interference with a private interest, and does not create an unconstitutional presumption, we conclude that the amended ordinance meets the rational-basis test and does not facially violate Fletcher's substantive-due-process rights under the Minnesota Constitution.
III. The district court erred in concluding that the amended ordinance violates Fletcher's equal-protection rights.
The city also challenges the district court's determination that the amended ordinance violates the equal-protection clause of the Minnesota Constitution. "A threshold consideration in determining whether a statute violates equal protection is whether similarly situated individuals are treated differently." Healthstar Home Health, Inc. v. Jesson , 827 N.W.2d 444, 449 (Minn. App. 2012). The equal-protection clause does not forbid classifications. Ruberto v. County of Washington , 572 N.W.2d 293, 299 (Minn. 1997). It only forbids "governmental decision makers from treating differently persons who are in all relevant respects alike." Id.
"If the classification has some reasonable basis, it does not offend the constitution simply because it is not made with mathematical nicety or because in practice it results in some inequality." Guilliams v. Comm'r of Revenue , 299 N.W.2d 138, 143 (Minn. 1980) (quotation omitted). The "difference between classes need not be great, and if any reasonable distinction can be found, a court should sustain the classification." Hegenes , 328 N.W.2d at 721 (quotation omitted). "Furthermore, legislative economic reform may take one step at a time, addressing itself to that phase of the problem which seems most acute to the legislative mind." Fed. Distillers , 229 N.W.2d at 156 (denying an equal-protection challenge to a statute requiring all licensed distillers of liquor to offer their products for sale to all Minnesota wholesalers on an equal basis but not extending that requirement to include wines and malt beverages). "[O]nly invidious discrimination is deemed constitutionally offensive." Garcia , 683 N.W.2d at 298 (quotation omitted).
*427 We review an equal-protection challenge under a rational-basis standard unless the challenge involves a suspect classification or a fundamental right. Id. As discussed above, the amendments do not implicate a fundamental right; nor do they implicate a suspect classification. Accordingly, we review Fletcher's equal-protection challenge to the amended ordinance under the rational-basis test. The rational-basis test applicable to an equal-protection claim under the Minnesota Constitution consists of three prongs:
(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.
Id. at 299 (quotation omitted). We address each prong in turn.
A. The distinctions that separate the classifications are genuine and substantial.
The city argues that the distinctions between the exempted rental properties and other rental properties are substantial and genuinely related to its goal of increasing housing opportunities for voucher holders. Fletcher argues that the differences are neither genuine nor substantial.
The amended ordinance exempts four classes of rental properties: (1) a room in an owner-occupied single-family dwelling; (2) a single-family dwelling or single dwelling unit being rented for no more than 36 months by an owner who homesteaded the unit at the start of the rental period; (3) a unit of an owner-occupied duplex; and (4) a previously homesteaded property of an owner on active military duty. MCO § 139.30(b)(1)-(4).
The exempted properties all rent out only a single unit and comprise a small percentage of the housing market.[8] Because the exempted properties are a small part of the housing market, they contribute less to the amended ordinance's purpose of increasing the availability of housing opportunities to voucher holders than larger units. Furthermore, the landlords of such properties are renting only a single unit in a dwelling currently or recently occupied by the owner. Such landlords may be less likely to have property managers, and the burden of complying with the requirements of the Section 8 housing program may be greater on them than the burden imposed on landlords renting out larger properties with multiple *428 units. As such, some of the exempted landlords may qualify for the amended ordinance's hardship defense, and exempting such landlords as a class, rather than requiring individual determinations as to each landlord, allows the city to focus its oversight resources on landlords who provide the vast majority of housing units in Minneapolis. The classifications have genuine and substantial distinctions relative to the public purpose of increasing housing availability for voucher holders.
Fletcher argues that the differences between an owner-occupied duplex, an owner-occupied triplex, and a duplex not occupied by an owner are insubstantial. But an owner renting out two units of a triplex or both units of a duplex has twice as many tenants as an owner renting out one unit of a duplex. As the Minnesota Supreme Court has noted, "[T]here are manifest differences between a duplex and a large multiunit complex, and the fact that these differences diminish when comparing triplexes to four-unit properties goes to where the line should be drawn. For constitutional purposes, the line drawn need not be perfect." Hegenes , 328 N.W.2d at 722 (upholding a tax classification distinguishing between rental properties of three units or less and those with four units or more). In deciding Hegenes , the supreme court quoted with approval Justice Holmes's observation that:
When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark.
Id. (quoting Louisville Gas & Elec. Co. v. Coleman , 277 U.S. 32, 41, 48 S. Ct. 423, 426, 72 L.Ed. 770 (1928) (Holmes, J., dissenting)). Although the line between an owner renting out one unit of a duplex and an owner renting out both units of a duplex or two units of a triplex may seem small, the distinction is real, and we cannot say that it is very wide of any reasonable mark. We therefore conclude that the distinctions that separate the classifications are genuine and substantial.
B. The classifications are relevant to the purpose of the law.
The city argues that the distinctions are relevant to the purpose of increasing housing opportunities for voucher holders because the exempted properties are limited to single units and comprise a small percentage of the housing units available in Minneapolis. Fletcher argues that if the city wishes to increase housing availability for voucher holders, the amended ordinance should not exempt any landlords. We are not persuaded by Fletcher's argument that the city may not exempt any landlords when attempting to increase housing opportunities for voucher holders.
The rational-basis test does not require the city to show that the exempted units could not provide housing to voucher holders, only that there is an "evident connection between" the classifications and the purpose of the amended ordinance. Garcia , 683 N.W.2d at 299 (quotation omitted). Because there is an evident connection between increasing housing availability for voucher holders and exempting certain classes that provide a small portion of the *429 rental market, we conclude that this prong of the rational-basis test is met.
C. The purpose of the amended ordinance is one that the city can legitimately attempt to achieve.
The city argues that attempting to increase housing availability for voucher holders is a legitimate public purpose that the city may attempt to achieve. Fletcher argues that, under our decision in Healthstar , the city must also show that the means the city uses to achieve its purpose are legitimate. Fletcher contends that the city's means are not legitimate because the amended ordinance allows the exempted classes to continue to discriminate against voucher holders based on their status with regard to public assistance.
In Healthstar , this court noted that some previous cases suggested such a requirement but that those cases dealt with means that were "constitutionally suspect or involved invidious discrimination." 827 N.W.2d at 453. We ultimately declined to decide whether the means used to achieve a purpose must be legitimate and ruled on other grounds. Id. But even accepting Fletcher's argument that the amended ordinance must use legitimate means to meet the purpose of increasing housing opportunities for voucher holders, the amended ordinance meets that burden.
The amended ordinance's exemptions do not allow the exempted landlords to discriminate against tenants based on their status with regard to public housing assistance because such discrimination is prohibited by state law. Minn. Stat. § 363A.09, subd. 1 (2018). The amended ordinance goes further than state law by prohibiting most landlords from discriminating on the basis of the requirements of a public-assistance program. Creating such a prohibition, while exempting a class of properties that supplies only a small portion of the housing market, is a legitimate means to increase housing opportunities for voucher holders.
Because the amended ordinance meets all three prongs of the rational-basis test, we conclude that the amended ordinance does not facially violate Fletcher's equal-protection rights under the Minnesota Constitution.
IV. We need not decide whether the district court erred in concluding that Fletcher's other claims are moot.
After granting Fletcher's motion for summary judgment on its substantive-due-process and equal-protection claims, the district court dismissed as moot Fletcher's claims that the amended ordinance is preempted by Minnesota law, that the amended ordinance constitutes an unlawful regulatory taking, and that the amended ordinance deprives Fletcher of its right to freedom of contract. Fletcher argues that the district court erred in concluding that its other claims are moot. Because we conclude that the district court erred in granting summary judgment on Fletcher's substantive-due-process and equal-protection claims and in denying summary judgment to the city on those claims, and because we remand for the district court to consider Fletcher's other claims, we need not decide whether the district court erred in concluding that Fletcher's other claims are moot.
DECISION
The district court correctly concluded that the amendments do not implicate a fundamental right and Fletcher's constitutional claims are therefore subject to rational-basis analysis. But the district court erred by limiting its analysis of the amended ordinance's public purpose to reducing *430 prejudiced-based discrimination, and the district court erred in concluding that the amended ordinance facially violates Fletcher's substantive-due-process and equal-protection rights. We reverse the district court's grant of summary judgment to Fletcher and its denial of summary judgment to the city on Fletcher's substantive-due-process and equal-protection claims, and remand for the district court to consider Fletcher's other claims.
Reversed and remanded.

Respondents/cross-appellants Fletcher Properties, Inc., et al. include 54 companies owning multi-tenant properties.

The district court record contains a significant amount of information about the rental market and the Section 8 program in Minneapolis, including the HOME Line survey.

References in this opinion to the amended ordinance refer to the final version of Title 7 of the Minneapolis Code of Ordinances adopted in December 2017. We note that Fletcher only challenged the constitutionality of the changes that the amendments made to Title 7 of the Minneapolis Code of Ordinances. The constitutionality of the rest of the amended ordinance is not at issue.

The district court applied the former version of rule 56, which at the time, was Minn. R. Civ. P. 56.03. The rule was recently "revamped" to more "closely follow" the federal rules and was renumbered to Minn. R. Civ. P. 56.01. Minn. R. Civ. P. 56 2018 advisory comm. cmt. When promulgating amendments to rule 56, effective on July 1, 2018, and applicable to pending cases, the Minnesota Supreme Court specifically indicated that amended language on the standard for granting summary judgment reflects recent Minnesota caselaw. Order Promulgating Amendments to Rules of Civil Procedure , No. ADM04-8001 (Minn. Mar. 13, 2018). Because the legal standard is unchanged, we cite to the current version of rule 56.01, even though the district court applied the former version of the rule.

We note that the city does not dispute that the amended ordinance implicates Fletcher's substantive-due-process rights, and therefore we do not address that issue. Rather, the city challenges the district court's conclusion that the amended ordinance violates Fletcher's substantive-due-process rights.

Fletcher also argues that because the amended ordinance involves the city's use of its police powers, the amended ordinance must have some tendency to accomplish its purpose. Fletcher did not raise the issue of whether the amended ordinance is a proper exercise of the city's police powers in district court. Appellate courts generally will not consider matters not argued to and considered by the district court. Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988). Thus, Fletcher's argument that the amended ordinance is not a proper exercise of the city's police powers is not properly before this court.

Because we conclude that the amended ordinance rationally serves the public purpose of increasing housing opportunities for voucher holders, we do not address the city's arguments that the amended ordinance also rationally serves the public purposes of reducing prejudice-based discrimination and reducing the disparate impact that results from landlords' decisions not to participate in the Section 8 program.

We note that in the city's supplemental answers to Fletcher's interrogatories, the city asserted that "[t]he vast majority of licensed rental units in Minneapolis are situated in multi-housing properties with 3 or more units." The city attached its interrogatory answers as an exhibit in its motion for summary judgment and included this statement in its recitation of the facts. On appeal, the city again stated in its brief that "the vast majority of licensed rental units in Minneapolis are situated in multi-housing properties with 3 or more units." Fletcher did not dispute this assertion either in district court or in its appellate brief. Uncontroverted statements in briefs may be taken as true. Loth v. Loth , 227 Minn. 387, 35 N.W.2d 542, 550 (1949). Because Fletcher does not challenge the city's assertion that the vast majority of licensed rental units are situated in multi-housing properties, we take the city's assertion as true.